**INDIANAPOLIS BREWING CO., Inc., v.
LIQUOR CONTROL COMMISSION OF
MICHIGAN et al.**

No. 8269.

District Court, E. D. Michigan, S. D.

Feb. 3, 1938.

Harris W. Wienner, of Detroit, Mich., and McHale, Arthur & Myers, of Indianapolis, Ind. (Thomas F. O'Mara, of Terre Haute, Ind., and Herbert J. Patrick, of Indianapolis, Ind., of counsel), for plaintiff.

James M. Barrett, Jr., of Fort Wayne, Ind., amicus curiae.

Raymond W. Starr, Atty. Gen., and Edmund E. Shepherd and George H. Heideman, Asst. Attys. Gen., for defendant.

Before SIMONS, Circuit Judge, and MOINET and O'BRIEN, District Judges.

SIMONS, Circuit Judge.

The plaintiff is a brewing corporation of the state of Indiana, and brings this suit by bill in equity against the members of the Michigan Liquor Control Commission, the Governor and Secretary of State as ex officio members of the Commission, and the state's Attorney General, to restrain by temporary and permanent injunction the enforcement of certain pro-

970

visions of the State Liquor Law on the ground that they are violative of both Federal and State Constitutions. In· conformity with law, a three-judge court was specially convened to consider the petition for interlocutory injunction. No answer having been filed—the defendants moving to dismiss—we find the facts, so far as necessary to decision, as alleged in the bill and its accompanying affidavits.

The plaintiff is engaged in the manufacture of beer in Indiana and its sale in interstate commerce. The defendants are residents and citizens of Michigan and public officers of that state charged with the duty of enforcing its liquor laws and proposing to do so. The plaintiff is a licensee of the Michigan Liquor Control Commission, qualified as an out-of-state manufacturer to ship beer into Michigan, and has built up a valuable business and good will for its product in that state. In July, 1937, Pub.Acts 1937, No. 281, § 1, the Michigan Legislature amended section 40, of Act No. 8, of the Public Acts of the Extra Session of 1933 to provide that after its effective date the Liquor Control Commission should forthwith adopt a regulation designating the states, the laws, rules or regulations of which (1) are found to require a licensed wholesaler of beer therein to pay an additional fee for the right to purchase, import, or sell beer manufactured in Michigan; or (2) which deny the issuance of a license authorizing the importation · of beer to any duly licensed wholesaler of beer therein who may make application for such license; or (3) which prohibit licensed wholesalers·of beer therein from possessing or selling beer purchased in Michigan, unless the one from whom it is purchased has secured a license and paid a fee therein, when such seller neither transports the beer into said state nor sells the same therein; or (4) impose any higher taxes or inspection fees upon beer manufactured in Michigan when transported into or sold therein than· is imposed upon beer manufactured and sold within said state, and that the regulation so adopted shall prohibit all licensees from purchasing, receiving, possessing, or selling, any beer manufactured in any state therein designated; such regulation to become effective ninety days after its adoption.

Pursuant to the authority and direction of amended · section 40, the defendant Liquor Control Commission on the 14th· day of December, 1937, adopted a regulation as therein provided designating specific states, including Indiana, as discriminatory, and as a result the purchasing, receiving, possessing or selling of any beer manufactured in Indiana will become unlawful after the 14th day of March, 1938. The enforcement of this regulation will injure or destroy the business which the plaintiff has developed in Michigan. The discriminations against Michigan beer by the state of Indiana which led to the proscription of beer from that state by the regulation, are to be found in sections 8, 9, and 41 of the Indiana Liquor Control Act of 1935. Laws 1935, c. 226. They require that licensed Indiana wholesalers in order to secure an import privilege pay an additional fee of $1,500, and limit such permits to not more than 100. They require an additional bond for handling out-of-state beer of $10,000, and limit importation to beer which is the absolute property of the permittee.

While the bill assails validity in respect to numerous provisions of the Federal and State Constitutions, the issue, upon consideration of the decision in State Board of Equalization v. Young's Market Co. et al., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38, followed and applied by a local three-judge court in Zukaitis et al. v. Fitzgerald et al., D.C., 18 F.Supp. 1000, has now been narrowed in argument and briefs to a consideration of the assailed statute in respect to invalidity under the "Equal Protection Clause" of the Fourteenth Amendment. This is the plaintiff's main reliance.

Conceding that under the Young's Market Case a state may in the exercise of its police power, now freed by the Twenty-First Amendment from the restraint of the commerce clause, Const. art. 1, § 8, cl. 3, discriminate against out-of-state beer, or against persons importing or dealing in such beer, and likewise conceding under compulsion of that decision that a classification which distinguishes in treatment as between local beer and out-state beer does not offend the equal protection·clause, the plaintiff urges that a classification which differentiates the product of certain states from that of other states is wholly arbitrary and capricious, and void under the equal protection clause. There exists no reasonable basis, it says, for this difference of treatment, and the regulation· has no relation to the exercise of the police power of the state in protecting the health, safety, morals, and welfare of its people. Nor does it aid in policing the

state's regulatory laws governing the manufacture and sale of beer. Its purpose, it contends, is purely retaliatory and economic, for Michigan has no concern with the laws of other states and no power to impose its will by economic restrictions or prohibitions upon the lawmaking power of other states. Nor has it the power to enact statutes or adopt regulations the enforcement of which may be subject to the exercise of legislative power in another state.

We have carefully examined the contentions thus stated. That the scope of state police power, except as it may have been restricted by constitutional grant of power to the federal government, is not limited by narrow connotations to be assigned to the historic phrase "the protection of the health, safety and morals of the people," would seem to be fairly clear upon consideration of many decisions. Lake Shore & M. S. Railroad Co. v. Ohio, 173 U.S. 285, 19 S.Ct. 465, 43 L.Ed. 702; Chicago, B. & Q. Railroad Co. v. Illinois Drainage Commissioners, 200 U.S. 561, 592, 26 S.Ct. 341, 50 L.Ed. 596, 4 Ann.Cas. 1175; Mutual Loan Co. v. Martell, 222 U.S. 225, 32 S.Ct. 74, 56 L.Ed. 175, Ann. Cas.1913B, 529; Barbier v. Connolly, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923; Cox v. Texas, 202 U.S. 446, 26 S.Ct. 671, 50 L.Ed. 1099. Were there still doubt of the extent of such power as is sought to be exercised in the presently considered enactment it would, we think, be resolved by the recent decision of the Supreme Court in the Louisiana Chain Store Case, Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, 778, 81 L.Ed. 1193, 112 A.L.R. 293, wherein it was thought to reach to the promotion of "fair competitive conditions and to equalize economic advantages," and where it was also thought not limited by the fact that "the evils requiring regulation arise solely from operations * * * in part the result of extra-state transactions."

It is true, of course, that arbitrary discriminations and classifications without reasonable basis are repugnant to a system of constitutional limitations, and may offend against the letter of the equal protection clause. But courts will not lightly assume legislative arbitrariness and caprice, and will not "declare a legislative discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators." So, "A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." Metropolitan Co. v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 540, 79 L.Ed. 1070.

That the discrimination of the statute here assailed and the regulation adopted in pursuance thereof are not directed specifically against the industries of Indiana or their customers in Michigan is clear, for nine other states are in the same classification, and it operates equally upon all. Let it be conceded that a classification, even though general in terms, may still be unreasonable and arbitrary; such is not the case here. The long history of efforts by state and national governments to control and regulate the manufacture and sale of alcoholic beverages, culminating in the adoption of the prohibitory Eighteenth Amendment and its repeal by the Twenty-First Amendment, with the qualification incorporated therein, demonstrates beyond peradventure that the manufacture and sale of alcoholic liquors are peculiarly subject to abuse, and that the public interest requires their most careful supervision. To that end states generally limit the number of persons who may engage therein, require licenses and bonds, and inquire into the character, reputation, and financial ability of permittees. Where the industry is legalized there is a vital state interest in the economic stability of those who are permitted to engage in it, to the end that the usually high taxes and license fees may be promptly paid and that difficult competitive conditions may not tempt them to sharp practice and law evasion. Strict numerical limitation upon manufacturers, wholesalers, and retailers, is sufficiently demonstrative. Michigan, finding the markets of other states closed to its own industry while its own market is open to unlimited competition, is free to seek legislative correction of an unequal competitive condition within the limits of its power. It may not, of course, exercise extraterritorial power or control the Legislatures of its sister states, but it is idle to deny it power to regulate its own industry and control its own market to the extent that its industries are elsewhere excluded, and to the extent that such exclusion threatens their economic stability, and it is not an unreasonable classification to dis-

972

criminate against out-state products in respect to their source when the laws of the state of origin create the evil sought to be remedied and the classification operates equally upon all who fall within its reach.

 It is not sound challenge to this power to say that the Michigan act will not effectuate the legislative purpose since the closing of its doors to the beer of ten states will only bring a greater flow of beer into Michigan from the larger producing states of which Indiana is not one. The contention is based on speculation, but even if rested upon fact it is still tenuous, for, "the legislature is not required to make meticulous adjustments in an effort to avoid incidental hardships. It is enough that the classification has reasonable relation to the differences." Great Atlantic & Pacific Tea Co. v. Grosjean, supra, 301 U.S. 412, 424, 57 S.Ct. 772, 776, 81 L.Ed. 1193, 112 A.L.R. 293. Power is not to be denied merely because it might have been more wisely or more effectually exercised.

The plaintiff relies very largely for support to its assault upon the reasonableness of the classification upon the decision of a three-judge court in Minnesota in the case of Joseph Triner Corporation v. Arundel, D.C., 11 F.Supp. 145, decided originally before the announcement of the decision in the Young's Market Case, but thereafter to the same effect under the style Joseph Triner Corporation v. Mahoney, D.C., 20 F.Supp. 1019. It is sufficient to say that the Triner Case involved a classification wholly dissimilar to that here considered, that the Minnesota court found no reasonable basis for it, while for that here involved we do.

Notwithstanding an early concession that the validity of the regulation adopted by the Commission is not involved in this action except in so far as dependent upon the validity of the law authorizing it, the plaintiff makes belated effort to demonstrate that the Indiana Liquor Law does not substantially discriminate against out-state beer. We are not confronted, however, with choice of accepting one of two inconsistent positions, for neither the bill nor the amended bill allege infirmity in the regulation if the law be valid. Had such issue been raised it might have been met by the defense of adequate legal remedy under the provision contained in section 40, that "Any licensee or person adversely affected shall be entitled to review by certiorari to the proper court the question as to whether the commission had acted illegally or in excess of authority in making its finding with respect to any state." The question not being here, we do not, of course, decide it.

 Our conclusion is that the assailed Michigan statute is constitutionally valid. There being no other ground upon which it is sought, the prayer for interlocutory injunction is denied. It appearing also that a hearing upon the merits will add nothing to applicable or presently conceded facts, that relief, both temporary and permanent, is grounded solely upon asserted invalidity of the statute, and the case, unlike Borden's Co. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281, not being one where evidence is reasonably likely to make answer to that question clearer;

The bill is dismissed, with costs to the defendants.