**JOSEPH S. FINCH & CO. et al. v. McKITTRICK, Atty. Gen. of Missouri, et al., and four other cases.**

Nos. 668–672.

District Court, W. D. Missouri, Central Division.

Feb. 25, 1938.

James P. Aylward, George V. Aylward, Terrence M. O'Brien, and Ralph M. Russell, all of Kansas City, Mo., for plaintiffs.

Roy McKittrick, Atty. Gen. of Missouri, and Edward H. Miller and Aubrey R. Hammett, Jr., Asst. Attys. Gen., for defendants.

Before WOODROUGH, Circuit Judge, OTIS and COLLET, District Judges.

OTIS, District Judge.

Following the adoption of the Twenty-First Amendment to the Constitution, may Missouri prohibit the sale within the state of intoxicating liquors manufactured in such other states as have laws discriminating against intoxicating liquors manufactured in other states (including Missouri)? More specifically, if Michigan has a law imposing a tax upon the importation of intoxicating liquors from Missouri and other states, which tax (or a tax similar in amount) Michigan manufacturers of intoxicating liquors are not required to pay, may Missouri lawfully prohibit the sale in Missouri of intoxicating liquors manufactured in Michigan? Such are the questions presented by these cases. Missouri has such a statute. Laws of Missouri 1937, p. 536, Mo.St.Ann. § 4525h—1 et seq., p. 4689. Section 4 of that statute, Mo.St.Ann. § 4525h—4, p. 4689, provides: "The transportation or importation into this state, or the purchase, sale, receipt, or possession herein, by any licensee, of any alcoholic liquor manufactured in a 'state in which discrimination exists' is hereby prohibited, and it shall be unlawful for any licensee to transport or import into this state, or to purchase, receive, possess, or sell in this state, any alcoholic liquor manufactured in any 'state in which discrimination exists' as herein defined."

The phrase, "state in which discrimination exists," is defined in the statute as we indicated in the first two sentences of this paragraph. The plaintiff (or plaintiffs) in each of the five cases is (or are) incorporated and manufacturing intoxicating liquors in a "state in which discrimination exists." The plaintiffs contend that the Missouri statute is invalid in that it violates (a) the "commerce clause" of the Constitution, article 1, § 8, cl. 3, and (b) the "equal protection clause" of the Fourteenth Amendment. They ask that enforcement of the statute be enjoined.

**The "Commerce Clause" and the Twenty-First Amendment.**

1. We would have thought that the first of the two contentions had in it much of merit were it not for the opinion and judgment of the Supreme Court in State Board v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38, decided November 9, 1936. That case involved the validity of a California statute imposing a license fee for importing beer. It was the opinion of the court that while before the adoption of the Twenty-First Amendment such a statute clearly would have been invalid ("because the fee would be a direct burden on interstate commerce" and because "the commerce clause confers the right to import merchandise free into any state, except as Congress may otherwise provide"), the effect of section 2[1] of the Amendment was to abrogate "the right to import free, so far as concerns intoxicating liquors" and to confer upon each state "the power to forbid all importations [of intoxicating liquors] which do not comply with the conditions which it prescribes." Page 78. By reason of this opinion it must now be said that the implied prohibition upon state legislation arising from the "commerce clause" no longer exists, in so far as intoxicating liquors are concerned. So far as that one commodity is concerned, the nation again is in that same situation in which it was as to all commerce before the adoption of the Constitution.

**The "Equal Protection" Clause of the Fourteenth Amendment.**

2. The opinion and judgment in State Board v. Young's Market Co. do not, however, dispose of the second contention made by plaintiffs. It was indeed contended in that case that the challenged California statute violated the "equal protection" clause. The classification of that statute was: Importers of beer and manufacturers of beer within the state. The statute discriminated against the first class in favor of the second class (although that discrimination perhaps was counterbalanced). The court said (page 79): "A classification recognized by the Twenty-First Amendment cannot be deemed forbidden by the Fourteenth." But the classification which is

[1] Section 2 of the Twenty-First Amendment provides that: "The transportation or importation into any State, Territory, or possession of the United States for de-livery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

"recognized by the Twenty-First Amendment" is one based on a distinction between intoxicating liquors manufactured within and without a state. It does not authorize a distinction between intoxicating liquors all of which are manufactured in other states. The classification made by the Missouri statute must stand or fall as may be required by the general principles developed for the enforcement of the Fourteenth Amendment.

■ That provision of the Fourteenth Amendment reading, "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws," was most illumined by the Supreme Court when long ago (1886) it said that the provision guaranteed to all persons "the protection of equal laws." Yick Wo v. Hopkins, 118 U. S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220. The laws of a state must apply equally to all persons in the same or a similar situation. These principles are elementary. Equally elementary is it that a state "when enacting laws may, in its discretion, make a classification of persons, firms, corporations, and associations, in order to subserve public objects." Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 560, 22 S.Ct. 431, 439, 46 L.Ed. 679. What are the principles by which the propriety of a classification is to be determined?

These principles again and again have been stated by the Supreme Court. " * * * (legislation) which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." Barbier v. Connolly, 113 U.S. 27, 32, 5 S.Ct. 357, 360, 28 L.Ed. 923. "The fourteenth amendment * * * does not prohibit legislation which is limited * * * in the objects to which it is directed. * * * It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions * * *." Hayes v. Missouri, 120 U.S. 68, 71, 7 S.Ct. 350, 352, 30 L.Ed. 578. "[Classification] must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * it [must be] one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification. * * *" Gulf, Colorado & Santa Fe Railway Co.

v. Ellis, 165 U.S. 150, 155, 17 S.Ct. 255, 41 L.Ed. 666, quoted in Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 560, 22 S. Ct. 431, 439, 46 L.Ed. 679. " * * * (It) is obvious that the legislature is the only judge of the policy of a proposed discrimination. * * * When a state legislature has declared that * * * policy requires a certain measure, its action should not be disturbed by the courts * * * unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched." Missouri, Kansas & Texas Railway Co. v. May, 194 U.S. 267, 269, 24 S.Ct. 638, 639, 48 L.Ed. 971.

" * * * (A) state may classify with reference to the cost to be prevented, and * * * if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. * * *" Patsone v. Pennsylvania, 232 U.S. 138, 144, 34 S.Ct. 281, 282, 58 L.Ed. 539. (The case upheld a statute forbidding unnaturalized foreign born persons owning shotguns). "It must * * * be said that reasonable classification implies action consistent with the legitimate interests of the state * * * these cannot be so broadly conceived as to bring them into hostility to exclusive Federal power." Truax v. Raich, 239 U.S. 33, 42, 36 S.Ct. 7, 11, 60 L.Ed. 131, L.R.A.1916D, 545, Ann. Cas.1917B, 283. (The case involved an Arizona statute limiting employment of aliens lawfully within the United States.) "Classification * * * must regard real resemblances and real differences between things and persons, and class them in accordance with their pertinence to the purpose in hand." Id. " * * * (Classification) must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; * * * classification cannot be arbitrarily made without any substantial basis." Truax v. Corrigan, 257 U.S. 312, 337, 42 S.Ct. 124, 131, 66 L.Ed. 254, 27 A.L.R. 375. " * * * [The] mere fact of classification is not enough to put a statute beyond the reach of the equality provision of the Fourteenth Amendment. Such classification must not be 'purely arbitrary, oppressive or capricious.' * * * But the mere production of inequality is not enough. * * * The inequality pro-

duced, in order to encounter the challenge of the Constitution, must be 'actually and palpably unreasonable and arbitrary.'" Radice v. New York, 264 U.S. 292, 296, 44 S.Ct. 325, 327, 68 L.Ed. 690. "[The Amendment] does require that the classification be not arbitrary, but based on a real and substantial difference, having a reasonable relation to the subject of the particular legislation." Power Mfg. Co. v. Saunders, 274 U.S. 490, 493, 47 S.Ct. 678, 679, 71 L.Ed. 1165. "It never has been found possible to lay down any infallible or all-inclusive test by the application of which it may be determined whether a given difference between the subjects of legislation is enough to justify the subjection of one and not the other to a particular form of disadvantage. * * * The nearest approach to a definite rule * * * is that, while the difference need not be great, the classification must not be arbitrary or capricious, but must bear some just and reasonable relation to the object of the legislation." Bayside Fish Flour Co. v. Gentry et al., 297 U.S. 422, 427, 56 S.Ct. 513, 516, 80 L.Ed. 772.

Mr. Justice Sutherland's summary of the precedents in the case last cited undoubtedly is the best statement of a test we have. It is not "infallible," it is not "all-inclusive," but it fairly epitomizes what the Supreme Court has said since it first recognized many years ago the doctrine of classification in applications of the equal protection clause. With this test in mind and a challenged statute to be tested we might well proceed after the manner now indicated. Let it be determined: (1) What object the state seeks to accomplish by the challenged statute? (2) Does the statute place persons in two or more classes and apply differently to the different classes? (3) Can it reasonably be argued that the object of the statute will be promoted by a recognition of the differences between the classes and the different application of the statute to the several classes. If question 3 is answered in the affirmative then, of course, the classification is not "arbitrary or capricious" and the equal protection clause is not violated. The statute may be invalid for some other reason but not because it conflicts with the Fourteenth Amendment.

What object does Missouri seek to accomplish by the challenged statute? Learned counsel for plaintiffs in their brief say that the statute was enacted "by reason of certain so-called discriminatory features in the laws of those states (Indiana, Pennsylvania, Massachusetts and Michigan) which the legislature of Missouri believed to be harmful, not to the people as a whole, but to the brewers of Missouri who may desire to ship their products into Indiana, Pennsylvania, Massachusetts and Michigan." In his reply brief the Attorney General says: The object was "by all legitimate means at its (i. e. the State's) command, to obtain a repeal of the hostile legislation (i. e. hostile to Missouri manufacturers of intoxicating liquors) in the states which had adopted protective tariffs (license-fees upon importation of intoxicating liquors from Missouri and other states), and this method (i. e. the challenged statute) was chosen by Missouri when, in 1937, faced by a rising tide of discriminatory legislation in other states, its General Assembly enacted the Anti-discrimination Act." Counsel for the parties are right. Obviously, the object of this statute was to promote the interests of Missouri brewers and distillers, engaged in an important industry. The statute tends to accomplish that object in two ways: (a) By shutting off some competition from the Missouri field; (b) by offering an inducement to other states to withdraw barriers to the products of this Missouri industry sought to be imported into those states. It would be idle to deny that such is the object of the statute and such the means by which the object is sought to be accomplished.

■ It would be idle to deny that the object aimed at by this statute is one proper to be sought after by the state. Of course Missouri may legislate to promote the interests of any Missouri industry. Barbier v. Connolly, 113 U.S. 27, 31, 5 S.Ct. 357, 28 L.Ed. 923. The welfare of the people depends upon the success of the industries of the state. By promoting the interests of first one industry and then another the state protects and advances welfare of all the people. One piece of legislation will be designed to benefit those engaged in agriculture, another to benefit those engaged in mining, another to benefit those engaged in manufacturing. Nor is the benefit of any single piece of legislation confined to those who first receive it. What benefits the brewers, for example, benefits also those who labor in the breweries, benefits the farmers whose grains the brewers purchase, benefits the merchants patronized by those more directly benefited. Men reasonably might argue that what benefits any

one great industry in a state benefits the whole people.

The question remains: May it be contended with any reason that this proper object of legislation will be promoted by the classification of this statute? But the question is not difficult. Who will deny that at least it can be argued with a show of reason that the Missouri statute will tend to induce Indiana and Pennsylvania and Massachusetts and Michigan to remove the barriers they have put up to shut out the products of Missouri brewers and distillers (as well as like products from other states)? The Missouri statute discriminates between the manufacturers of intoxicating liquors in Indiana and those, for example, in Georgia, but for no merely arbitrary or capricious reason (as the color of their hair or the fact that the name of one state begins with the letter "I" and the name of the other begins with the letter "G"). The Missouri statute discriminates against Indiana manufacturers in favor of those in Georgia because Indiana discriminates against Missouri manufacturers and Georgia does not. The discrimination certainly is bottomed on reason, not caprice. It is bottomed on the same reason as supports those national laws which effectuate the raising and lowering of our tariffs against goods imported from foreign countries as they raise and lower their tariffs against American manufactured goods.

■ Conceding that the classification made in a statute is reasonably related to the object sought to be achieved by the statute, the statute must be held not to violate the equal protection clause. If the means (aside from the classification) by which the object is sought to be achieved violates some provision of the Constitution other than the equal protection clause, that is a different matter. In Truax v. Raich, supra, the statute involved was held unconstitutional because the means whereby its object was sought to be achieved was inconsistent with the exclusive federal power over immigration and its incidents, and not because the classification had no reasonable justification. Before the adoption of the Twenty-First Amendment the statute now before us would have been held invalid because its lawful object would have been sought to be achieved by a means violating the implied prohibition of the commerce clause. But no provision of the Constitution can be pointed to which this statute now violates either in its object or the means whereby the object is sought to be achieved.

■ The problem may appear simpler if we suppose that the Missouri statute does not absolutely prohibit the importation of intoxicating liquors from discriminating states but puts up exactly the same barriers (i. e., license fees for importation) against the importation of intoxicating liquors from those states which they have put up against intoxicating liquors imported from Missouri and other states. Would it be said that Missouri cannot impose a license fee on intoxicating liquors imported from California which imposes a license fee on intoxicating liquors imported from Missouri, unless Missouri also imposes a license fee on intoxicating liquors imported from Texas which does not impose a license fee on intoxicating liquors imported from Missouri? Would it be said that Missouri cannot impose a license tax on Iowa automobiles using Missouri roads and exempt Illinois automobiles from the same tax, solely because Iowa imposes and Illinois does not impose a license tax on Missouri automobiles using their respective highways? The Supreme Court has said, at least by way of clear dictum, that the last-mentioned distinction is valid. Kane v. New Jersey, 242 U.S. 160, 167, 37 S.Ct. 30, 61 L.Ed. 222. The two cases are identical in principle. But if Missouri can put up a hurdle against California which it is not required to put up against Texas, it can erect also an impassable barrier (complete prohibition) against California while allowing free ingress to importations of intoxicating liquors from Texas.

3. Since the submission of this case a three-judge court for the Eastern District of Michigan in a similar case has reached the same conclusion as that indicated in this opinion. Indianapolis Brewing Co., Inc., v. Liquor Control Commission, D.C., 21 F.Supp. 969.

Findings of Fact and Conclusion of Law.

We find the facts to be as stipulated by the parties, and conclude as a matter of law that the bills should be dismissed.

The Attorney General will submit appropriate form of decrees.