AJAX DISTRIBUTORS, INC., a corporation of the State of Delaware,

*vs.*

WILLARD SPRINGER, JR., constituting the "Delaware Liquor Commission."

*New Castle, November 25, 1941.*

*Josiah Marvel, Jr.,* of Marvel & Morford, and *William H. Bennethum,* for complainant.

*James R. Morford,* Atty. Gen. for Delaware, and *William S. Potter,* of Southerland, Berl, Potter & Leahy, for defendant.

*William H. Foulk* and *Robert C. Barab,* as *amici curiae,* appeared and filed brief in support of validity of statute attacked.

THE CHANCELLOR: The complainant attacks the validity of the Act of the General Assembly, entitled "An Act to Amend Chapter 176 of the Revised Code of Delaware, 1935, in Reference to Retaliatory Taxation and Regulation With Regard to the Importation, Sale and Transportation of Alcoholic Liquors." That Act provides:

"When by the laws of any other State, any other or greater taxes * * * are imposed on alcoholic beverages manufactured in the State of Delaware and being sold and dispensed in such other State, or on the manufacturers of alcoholic beverages located in the State of Delaware doing business in such other State or upon their agents therein, than the law of the State of Delaware imposes on alcoholic beverages imported from such other State being sold and dispensed in this State

or on the manufacturer of such alcoholic beverages or their agents do-
ing business in this State, so long as such laws continue in force in
such other State, the same taxes, * * * shall be imposed upon all such
alcoholic beverages and the manufacturers of such alcoholic beverages
of such other State doing business within this State * * *."

The solicitors for the Delaware brewers, who were per-
mitted to appear as *amici curiae*, contend that in order to
ascertain the real intended meaning of this Act it should
be read:

"When by the laws of any other State, any other or greater taxes
* * * are imposed on alcoholic beverages manufactured in the State
of Delaware and being sold and dispensed in such other State, * * *
than the law of the State of Delaware imposes on alcoholic beverages
imported from such other State being sold and dispensed in this State
* * * so long as such law continues in force in such other State, the
same taxes * * * shall be imposed upon all such alcoholic beverages
* * *."

They further contend that this is merely another way
of saying "whenever any other state imposes on sales therein
of alcoholic beverages manufactured in Delaware greater
taxes than Delaware imposes on sales herein on alcoholic
beverages manufactured in that State," the same taxes shall
be imposed, etc. In other words, they claim that the Act
applies to the alcoholic products of all other states sold here
which have other or greater taxes than are imposed by the
State of Delaware. Under this construction, the application
of the Act would not depend upon whether Delaware brewers
are actually "doing business", that is—selling their products
in such other states. When so construed, perhaps the Act
would be of a reciprocal rather than of a retaliatory nature.
But if that question be important, the omitted portions
cannot be disregarded, and when read in its entirety the
language used will not permit of that construction. Its
application to alcoholic beverages manufactured in another
state but sold here, and the consequent increase in taxes
ordinarily imposed, apparently depends upon whether alco-
holic beverages manufactured in Delaware are "being sold
and dispensed in such other state"; and also upon whether

the Delaware manufacturers "doing business" in that state are being compelled to pay higher taxes on sales there than their manufacturers would have been compelled to pay on their products sold here. Perhaps the Act is not very skillfully drawn, but from the language used it seems difficult to escape the conclusion that it is of a retaliatory nature. That the words "being sold and dispensed in such other state" in the first phrase are used in their usual and ordinary sense seems to be shown by the subsequent words "doing business", which appear in the same phrase. Other and later provisions of the Act of substantially the same nature seem to corroborate this conclusion. Nor does the fact that the application of the Act is in a sense conditional, affect its validity. 1 *Cooley's Constitutional Limitations*, (*8th Ed.*) 227. Both the Ajax Company, the complainant, and Willard Springer, Jr., constituting the State Liquor Commission, concede that this is the proper construction of that Act. But, when so construed, there is a difference of opinion as to its validity. The Ajax Company contends that it imposes wholly arbitrary, oppressive and unreasonable burdens and restrictions on the right of that company to conduct its business of selling alcoholic liquors, largely imported from another state, and therefore violates property rights guaranteed by *Section 7 of Article I of the Delaware Constitution of* 1897. See *State v. Danberg,* 1 *Terry* (40 Del.) 136, 6 *A. 2d* 596; *Becker v. State,* 7 W. W. Harr. (37 Del.) 454, 185 *A.* 92; *Liggett Co. v. Baldridge,* 278 *U. S.* 105, 49 *S. Ct.* 57, 73 *L. Ed.* 204. That section provides that no person "shall be deprived of life, liberty or property, unless by the judgment of his peers or by the law of the land." While this provision of our Constitution is couched in somewhat different language, it has substantially the same meaning as the due process clauses of the Federal Constitution (*Arts.* 5, 14). *State v. Rose,* 3 *W. W. Harr.* (33 Del.) 168, 132 *A.* 864, 45 *A. L. R.* 85; 16 *C. J. S., Constitutional Law,* § 567, *p.* 1142; 24 *Harv. Law Rev.* 366.

Perhaps one of the fundamental reasons for the adoption of the Federal Constitution was the necessity for national economic unity, unaffected by state lines, and unburdened by discriminatory and retaliatory local legislation, restricting commerce between the various states. Appropriate provisions to remedy that evil were, therefore, inserted in that instrument (Article 1, Section 8, clause 3). Prior to the Twenty-First Amendment, it is quite probable that the statute in question would have violated the interstate commerce clause of the Federal Constitution. *State Board of Equalization v. Young's Market Co.*, 299 *U. S.* 59, 57 *S. Ct.* 77, 81 *L. Ed.* 38; see also *Ziffrin, Inc., v. Reeves*, 308 *U. S.* 132, 60 *S. Ct.* 163, 84 *L. Ed.* 128. But that question is not involved in this case.

*Section* 2 of the *Twenty-first Amendment to the Constitution of the United States* provides:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

That amendment is expressly confined to "intoxicating liquors"; but under its provisions the "transportation or importation into any State" of such liquors "in violation" of its laws is expressly prohibited. The complainant company, therefore, necessarily concedes that under the Federal Constitution, since the adoption of the Twenty-first Amendment, the possible scope of local tax statutes, or of other legislation of a regulatory or even of a prohibitory nature, affecting intoxicating liquors, is quite broad. *State Board, etc., v. Young's Market Co., supra; Ziffrin, Inc., v. Reeves, supra; Indianapolis Brewing Co. v. Liquor Control Comm.*, 305 *U. S.* 391, 59 *S. Ct.* 254, 83 *L. Ed.* 243; see also 110 *A. L. R.* 951. In this connection the solicitor for the Ajax Company concedes in his brief, that a state statute regulating, by taxation or otherwise, the importation or transportation of intoxicating liquors, is not invalid "as an unreasonable bur-

den upon interstate commerce; nor does it violate the equal protection and due process clauses" of the Federal Constitution. *State Board, etc., v. Young's Market Co., supra; Mahoney v. Joseph Triner Corp.,* 304 *U. S.* 401, 58 *S. Ct.* 952, 82 *L. Ed.* 1424; *Indianapolis Brewing Co. v. Liquor Control Comm.,* (D. C.) 21 *F. Supp.* 969; *Id.,* 305 *U. S.* 391, 59 *S. Ct.* 254, 83 *L. Ed.* 243; *Finch & Co. v. McKittrick,* (D. C.) 23 *F. Supp.* 244; *Id.,* 305 *U. S.* 395, 59 *S. Ct.* 256, 83 *L. Ed.* 246; *Ziffrin, Inc., v. Reeves,* 308 *U. S.* 132, 60 *S. Ct.* 163, 84 *L. Ed.* 128; see also 16 *C. J. S., Constitutional Law,* § 512, *p.* 1027. True the possible rights of the Ajax Company under *Section* 7 *of Article* I of our *Constitution* are not affected by that admission But neither *State v. Danberg, Becker v. State,* nor *Liggett Co. v. Baldridge, supra,* support its contention that the Act of May 21st arbitrarily and unreasonably attempts, by taxation, to restrict its right to conduct its business of selling liquors, largely manufactured in and imported from another state, and, therefore, violates "the law of the land." In view of the fact that the interstate commerce clause of the Federal Constitution cannot be invoked by the complainant, and the so-called due process clause of our Constitution (§ 7, *Art.* I) is alone relied on, the possible rights of that company are obviously of a very limited nature.

Under the conditions prescribed in the Act, the classification adopted by the legislature for taxation purposes relates to "alcoholic beverages imported from another State and being sold here." Such beverages are discriminated against when compared with alcoholic beverages manufactured and sold in the state, but I find nothing arbitrary or unreasonable in the classification adopted. It is a discrimination based on reason rather than caprice. *Finch & Co. v. McKittrick, (D. C.)* 23 *F. Supp.* 244, *affirmed* 305 *U. S.* 395, 59 *S. Ct.* 256, 83 *L. Ed.* 246. The state is always materially interested in aiding and fostering the economic stability of its own industries. *State Board, etc., v. Young's Market Co.,*

*supra; Indianapolis Brewing Co. v. Liquor Control Comm.,*
(D. C.) 21 *F. Supp.* 969, *affirmed* 305 *U. S.* 391, 59 *S. Ct.*
254, 83 *L. Ed.* 243. And that was evidently the basic reason
for the enactment of the Act of May 21st. Our liquor manu-
facturers would naturally expect to sell some of their pro-
ducts in other and adjoining states. They would also natur-
ally expect that some brewers there would sell here. Prior
to May 21, 1941, the State of Pennsylvania imposed the
same taxes on all alcoholic beverages sold there, whether of
foreign or domestic manufacture, and, therefore, did not
in specific terms discriminate against the Delaware manu-
facturer. It did, however, impose higher taxes on Delaware
liquors sold in that state than Delaware imposed on liquors
imported from Pennsylvania and sold here. The increase
in the Delaware tax on alcoholic beverages imported from
the State of Pennsylvania and sold here, is approximately
24c per barrel and 56c per barrel, if sold in case lots. The
provisions of the Act are general; but that is the hardship
complained of. The Pennsylvania tax laws necessarily dis-
couraged the sale of our products in that state. On the other
hand, the lower tax laws here encouraged importations from
that state to the corresponding loss of our own manufac-
turers. Conceding that the business of the Ajax Company
is licensed by the state, and is, therefore, lawful, it is pecu-
liarly subject to a large measure of state regulation and
control, both in the way of taxation and otherwise. See
*Darling Apart. Co. v. Springer, Liquor Comm.,* 25 *Del. Ch.*
98, 15 *A.* 2d 670; same case on appeal 25 *Del. Ch.* 428, 22 *A.*
2d 397. Apparently that company does not question the right
of the Legislature to enact general Acts, clearly of a recipro-
cal nature, intended to bring about equal taxation in the sale
of alcoholic beverages in the various states. It concedes
that they tend to the ultimate benefit of our industries, and
are in no sense arbitrary and unreasonable. It contends,
however, that Acts of a retaliatory nature, such as the Act
of May 21, 1941, are in an entirely different category, and

are, therefore, void under *Section 7 of Article* I of our *Constitution.* But conceding that a retaliatory act may be more difficult to administer, the real ultimate purpose of the two classes of statutes seems to be somewhat the same. See *Indianapolis Brewing Co. v. Liquor Control Comm., (D. C.)* 21 *F. Supp.* 969, *affirmed* 305 *U. S.* 391, 59 *S. Ct.* 254, 83 *L. Ed.* 243; *Finch & Co. v. McKittrick,* (D. C.) 23 *F. Supp.* 244, 248, *affirmed* 305 *U. S.* 395, 59 *S. Ct.* 256, 83 *L. Ed.* 246. In the latter case, while a somewhat different statute was involved, the court below aptly said that it was "bottomed on the same reason that supports those national laws which effectuate the raising and lowering of our tariffs against goods imported from foreign countries as they raise and lower their tariffs against American manufactured goods." Regardless of the phraseology of our Act, and whether it be reciprocal or retaliatory, the interest of our state and its citizens is intended to be advanced. Because it tends to discourage importations, it may also aid in policing the liquor traffic here. See *State Board, etc., v. Young's Market Co., supra.*

At any rate, every reasonable inference is in favor of the validity of the Act attacked, and a court will not lightly assume legislative arbitrariness and caprice. *Indianapolis Brewing Co. v. Liquor Control Comm., supra; Zink v. Kessler Trucking Co.,* 8 *W. W. Harr.* (38 Del.) 271, 190 *A.* 637. Under the circumstances, it cannot be said that the Act of May 21st is clearly void. Nor does the Pennsylvania reciprocal tax statute on liquors, approved by the Governor on July 24, 1941, and set out in the statement of facts, affect this conclusion. It may materially affect the tax on our liquors sold there, and may, therefore, demonstrate that it is inadvisable to enact statutes similar to our Act, but it can have no other effect. The provisions of a legislative act of another state can play no part in determining whether an Act of the State of Delaware is arbitrary and unreasonable.

The Ajax Company points out that *Section* 1 *of Article* II *of the Delaware Constitution* provides:

"The legislative power of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives."

It contends that the application of the Act of May 21st necessarily depends on the Delaware brewers, and whether they sell their products in the State of Pennsylvania. That company, therefore, draws the conclusion that the Act violates this provision of the Constitution. I am unable to agree with that contention. Whether it applies to alcoholic beverages, imported from another State, is merely a question of fact to be determined by the defendant, constituting the Liquor Commission, whose duty it is to enforce the liquor laws of the State. See *Chapter* 176, *Revised Code* 1935.

Section 1 of the Act of May 21, 1941 provides:

"That 6159 *Sec.* 30 *Chapter* 176 *of the Revised Code of Delaware*, 1935, be and the same is hereby amended by adding to the end of (20) a new section to be known as 6159 *Sec.* 30(21) as follows:"

*Section* 30 relates to licenses, and paragraph (b) provides:

"The fees to be paid to the Commission upon the granting of licenses, shall be the following:

"For a license:"

Various kinds of licenses are enumerated in the twenty paragraphs then following, though the most of them repeat the words "For a license."

Perhaps the amendment in question might have been more properly made elsewhere; but, however that may be, it is complete in itself, and is not affected by any prefatory words applying to other and original portions of the section. The contention that it is wholly unintelligible cannot, therefore, be sustained.

The complainant's motion for a preliminary injunction is refused.