** Summary **
THE BUY AMERICAN ACT IS LEGALLY VALID The "Buy American Act" is valid and legal. Using the "Buy American Act" in your purchasing program is within the State law provided a foreign product is not substantially cheaper or is of not substantially superior quality at a competitive price. The Attorney General has considered your request for an opinion wherein you asked, in effect, the following questions: "1. Is the 'Buy American Act' (61 O.S. 51 [61-51] and 61 O.S. 52 [61-52] (1971)) legal?" "2. Is the Board of Affairs within the State law in using the 'Buy American Act' in its purchasing program?" Title 61 O.S. 51 [61-51] (1971) states: "All agencies, boards, commissions, offices, institutions, or other governmental bodies of the State of Oklahoma, and all individuals making purchases on behalf of such governmental bodies, shall purchase for such governmental bodies goods and equipment manufactured or produced in the United States of America, unless a foreign made product is substantially cheaper and of equal quality, or is of substantially superior quality to competing American products and is sold at a comparable price." Title 61 O.S. 52 [61-52] (1971) states: "Be it further resolved that properly prepared copies of this Resolution be sent to every agency, board, office, commission, institution or other governmental body of the State of Oklahoma which performs purchasing functions either on its own behalf, or on behalf of another governmental body." With reference to your first question, there have been some cases dealing with similar types of statutes in various states pertaining to the purchase of the particular state's products. This type of legislation has been held to be legal. 15 C.J.S., Commerce, 60, states on page 618: "Statutes limiting the persons with whom the state or its subdivision will contract for public work or supplies to persons who are residents of the states, or are engaged in business therein, or will perform the work contracted for within the State, or will use materials manufactured or produced in the State, may effect interstate commerce indirectly and yet not be a prohibited interference with or restriction thereof; such statutes do not profess to regulate all contracts, but only those of the state itself or of its subdivisions which, in the last analysis, are those of the state itself; and, like an individual, a state has the right to contract with whom it pleases, unless it contravenes in some way either the Federal or the State Constitution." In the case of City and County of Denver, et al . v. Bossie, Colo., 266 P. 214 (1920), the Colorado Court held in Syllabus 9: "C.L.S. 453-455, giving materials produced in state certain preference in contracts for public works, are not invalid as restricting commerce between states." In Joseph F. Finch Company, et al. v. McKittrick,23 F. Supp. 244 (W.D.Mo. 1938), the Federal District Court for the Western District of Missouri held in Syllabus 5: A. state may legislate to promote interests of any state industry, since welfare of the people depends upon success of industries of the state. " In State ex rel Collins v. Sanatobia Blank Book Stationary Co., Miss., 76 So. 258
(1917), the Mississippi Court held in Syllabus 1: "Laws 1916, C. 135, 3, prohibiting the letting by boards of supervisors of counties of contracts to furnish the county with blank books, stationary, etc., to any bidder who is a non-resident of the state, who has not a printing plant in the state or who is not a bona fide resident of the state actually engaged in the printing business is not violative of constitution U.S., Article I, Section 8 . . ." By analogy, the same rule of law would apply to goods made outside the United States since the intent and purpose of the legislation is to promote American industries, which would include Oklahoma industries. In summary, the State may legislate with reference to contracts in which the State is involved and in which the public interest of the State and its citizens is involved. It is therefore the opinion of the Attorney General that your first question be answered in the affirmative in that the "Buy American Act" is legal. With reference to your second question, you make reference in your letter that in the bid forms used, there is stamped on the bid forms "only American goods will be accepted," where you have had problems with foreign goods. To answer your second question, it is appropriate to point out that in 61 O.S. 51 [61-51], the State governmental bodies shall purchase American goods unless a foreign product is substantially cheaper and of equal quality, or is of substantially superior quality to competing American products and is sold at a competitive price. These limitations are self explanatory. It is therefore the opinion of the Attorney General that your second question be answered as follows: Using the "Buy American Act" in your purchasing program is within the State law provided a foreign product is not substantially cheaper or is of not substantially superior quality at a competitive price. (Todd Markum)