GREAT ATLANTIC & PACIFIC TEA CO. ET AL. *v.* GROSJEAN, SUPERVISOR OF PUBLIC ACCOUNTS, ET AL.

No. 652.   Argued March 30, 31, 1937.—Decided May 17, 1937.

*Messrs. Monte M. Lemann* and *Robert L. Wright*, with whom *Messrs. Joseph G. Gamble* and *J. Blanc Monroe* were on the brief, for appellants.

414

*Messrs. Martin A. Schenck* and *William J. Carr* filed a brief on behalf of F. W. Woolworth Co., appellant.

*Mr. Robert L. Wright* also filed a brief on behalf of Montgomery Ward & Co., Inc., appellant.

*Mr. E. Leland Richardson*, Assistant Attorney General of Louisiana, with whom *Messrs. Gaston L. Porterie*, Attorney General, and *J. C. Daspit* and *F. A. Blanche*, Assistant Attorneys General, were on the brief, for appellees.

Mr. Justice Roberts delivered the opinion of the Court.

This cause presents the questions whether the method prescribed by a chain store tax act for ascertaining the

rate of taxation offends the Fourteenth Amendment and the commerce clause of the Federal Constitution.

In 1932 the legislature of Louisiana adopted an act levying an occupation or license tax upon chain stores,[1] under which the exaction was fifteen dollars upon each of two or more stores, not in excess of five; upon each store in excess of five, but not exceeding ten, twenty-five dollars; and the amount increased in brackets for additional stores, the last bracket embracing stores in excess of fifty upon each of which the tax was two hundred dollars.

By Act 51 of 1934[2] the earlier law was amended to lay the tax on "persons, firms, partnerships, corporations or associations of persons engaged in the business of operating two or more stores or mercantile establishments, one or more of which is located in this state . . . under the same general management, supervision, ownership or control . . ." Section 3 provides that the tax "shall be based on the number of stores or mercantile establishments included under the same general management, supervision, ownership or control, whether operated in this State or not, and shall be fixed and graded as follows to wit: (1) Upon stores or mercantile establishments operated in this State and belonging to a chain or group having a total of not more than ten stores, the annual license shall be Ten ($10.00) Dollars for each such store operated in this State." There are fifteen additional paragraphs progressively increasing the rate per store in Louisiana of larger chains, the last fixing the rate for a store belonging to a chain of more than five hundred at $550.

The Great Atlantic & Pacific Tea Company, an Arizona corporation, owning, operating or controlling 15,082 stores in the United States, Canada, and elsewhere, 106 of which are in Louisiana, filed its bill in the District

---

[1] No. 19 of 1932; Acts of Louisiana, 1932, p. 125.

[2] Acts of Louisiana 1934, p. 251.

Court to restrain the appellees, state officers, from enforcing the statute. Other corporations operating chains, some units of which are located in Louisiana, intervened as plaintiffs. A temporary restraining order issued, the appellees answered the bill, and the case was heard upon pleadings and proofs by a specially constituted court of three judges, which upheld the statute and dismissed the bill.[3]

The constitutional infirmity of the Act is said to consist in arbitrary discrimination in favor of local as against national chains, in the attempt to tax property and activities which are beyond the state's jurisdiction, and in burdening interstate commerce. We hold the legislation impregnable to attack on these grounds.

*First.* The exaction is an occupation or license tax. The subject is the conduct of a business within Louisiana. Without contravening the equal protection clause of the Fourteenth Amendment a state may separately classify for taxation the conduct of a chain store,[4] and may increase the rate in proportion to the increase in the number of stores within the state, since the opportunities and powers of a chain store operator become greater with the growth of the number of units maintained.[5] The appellants assert that in adjusting the rate for a chain store in Louisiana the legislature may not take into account the size of the chain to which the store belongs, by counting the total number of its units wherever located. So to do, it is claimed, is arbitrarily to discriminate against sectional or national chains in favor of intrastate chains.

The District Court found that the testimony offered by the State was similar to that in *Tax Commissioners* v. *Jackson, supra;* established the difference in type of opera-

---

[3] 16 F. Supp. 499.

[4] *Tax Commissioners* v. *Jackson*, 283 U. S. 527; *Liggett Co.* v. *Lee*, 288 U. S. 517.

[5] *Fox* v. *Standard Oil Co.*, 294 U. S. 87, 100.

tion between the operator of one store and the operator of many, and the variance in advantage and mode of operation with the number of units in the chain. In addition, the court found that all the stores of a retail chain contribute to the central purchasing power of the chain irrespective of state lines and location of stores, and increase the per unit multiple advantage enjoyed by the operator of the system; that the greater the number of units the greater the purchasing power of the chain, the greater the rebates and allowances, the greater the advantages in advertising, the greater the capital employed, the greater the social and economic consequences, and the lower the cost of distribution and overhead. "In fine, the record in this case shows the contribution to the advantages made by each unit in the chain, and the per unit advantage made possible by the whole system, and in that respect only does it differ materially from the proof which was before the court in the *Jackson* case." These findings are assigned as error, but they have substantial support in the record and we therefore accept them.

If the competitive advantages of a chain increase with the number of its component links, it is hard to see how these advantages cease at the state boundary. Under the findings a store belonging to a chain of one hundred, all located in Louisiana, has not the same competitive advantages as one of one hundred Louisiana stores belonging to a national chain of one thousand. The appellants lean heavily on the findings of the court respecting the relative business in New Orleans of the Great Atlantic and Pacific Company and the H. G. Hill Stores, Inc., a Louisiana corporation. The court found that the operations of the two are generally of the same character; the former conducts one hundred and six stores in the state, sixty-two of which are in the city of New Orleans; the latter ninety-two in the state, of which eighty-seven are in the city. Each concern conducts grocery and meat stores with substan-

tially the same line of merchandise and their sales methods are practically the same. The gross volume of sales of Hill in New Orleans is much greater; it has more stores, and does more business per store in that city than the Atlantic and Pacific. The court further found, however, that the total purchasing power of the Atlantic and Pacific is much greater than that of Hill; that Atlantic and Pacific has field offices located at primary markets, which are in charge of specialists and supervised by central purchasing offices in New York, and maintains divisional warehouses throughout the country, whereas the operations of Hill are confined to Louisiana, and chiefly to New Orleans. Under the statute Hill is taxable at the rate of $30 per store as against $550 assessable against Atlantic and Pacific. These facts are said to demonstrate that the Act denies the appellant and other intervenors the equal protection of the laws by arbitrarily discriminating against national in favor of local chains. But the contention is answered not only by the specific finding respecting the difference between the two companies' methods but by the general finding that addition of units to a chain increases the competitive advantage of each store in the chain.

The court's findings are supported by evidence bearing upon a variety of advantages enjoyed by large chains which are unavailable to smaller chains. One striking illustration is furnished by the uncontradicted proof that the Atlantic and Pacific Company received, in the year 1934, from its vendors, secret rebates, allowances, and brokerage fees amounting to $8,105,000 which were demanded by the company as a condition of purchasing from the vendors in question. The leverage which accomplished this was the enormous purchasing power of the company. The amount thus obtained equals $530 for each of the Atlantic and Pacific Company's stores or nearly the amount of the tax exacted by the statute. The

appellants insist that these facts are not significant because there is testimony that, in the drug trade, quantity discounts usually do not increase after a certain volume of purchases is reached, but the testimony does not specify the point where quantity discounts cease to grow. The record discloses what would be plain enough without evidence, that generally volume of purchasing power spells lower prices, special terms, and other advantages. It is unnecessary to discuss the evidence supporting the findings with respect to other facilities enjoyed only, or in increased measure, by the larger chains.

The appellants urge that the Act arbitrarily discriminates in favor of local chains because it is inconceivable that a chain operating wholly within the state would have five hundred stores, not to mention upwards of fifteen thousand, the number maintained by the Atlantic and Pacific. The argument is inconsistent with the finding that additional units, wherever situate, increase the advantages and economic effects of the chain as a whole and of each unit; and ignores the possibility that a chain-store company of national scope might well be incor-. porated in Louisiana, whose stores in that state would be rated for taxation according to its total stores within and without the state.

Other instances of the working of the Act are cited to show that it arbitrarily discriminates against national chains and in favor of local ones solely because they are such. Thus, it is said, if a national chain owning 501 stores in other states, establishes a single store in a Louisiana city where there is a local chain of two or three like establishments, the national concern must pay a license of $550 for its one store while the stores of the local chain are taxed but $10 each. The appellees retort that since the earlier law imposed a tax of $15 on each store in the local chain and none upon the one Louisiana store of the national chain it was more vulnerable to the

charge of arbitrariness than the Act under review. Whatever the pertinence of the reply, the facts found respecting the advantages of a larger chain as compared with a smaller justify as not unreasonable or arbitrary the imposition of a higher license tax on the units of the former which are maintained within the state. Even one unit of such a national chain located in Louisiana enjoys competitive advantages over the stores of the local proprietor consequent upon its relation to the far-flung activities and facilities of the chain.

The act under review is to be distinguished from the Florida statute considered in *Liggett Co.* v. *Lee, supra,* which increased the tax if the chain happened to have stores in two counties of the state rather than in one. The increase of rate was held arbitrary because it was unrelated to the size or character of the chain and was conditioned solely upon the location of one or more of its units. The Louisiana act adopts no such basis of classification. A small chain of three stores, one of which is in Louisiana and two in Mississippi, will pay exactly the same tax as a similar organization having the same number of stores all in Louisiana. A concern having ninety-two stores scattered over ten states, seven of which are in Louisiana, will pay exactly the same tax per Louisiana store as the H. G. Hill Stores, Inc., all of whose ninety-two stores are in Louisiana. Thus it appears that the classification is not based upon the location of the stores within or without the state but upon the type of business conducted, the scale of that business, its accompanying competitive advantages and economic results.

Finally, since the court below found that the sales and earnings of the individual stores of a chain differ in various portions of the country and those of the Louisiana stores have been below the average for all stores of many of the appellants, the claim is that the statute, by taking into account all units indiscriminately in fixing the rate,

arbitrarily disregards the value of the local privilege for which the license fee is charged. We cannot say that classification of chains according to the number of units must be condemned because another method more nicely adjusted to represent the differences in earning power of the individual stores might have been chosen, for the legislature is not required to make meticulous adjustments in an effort to avoid incidental hardships.[6] It is enough that the classification has reasonable relation to the differences in the practices of small and large chains. The statute bears equally upon all who fall into the same class, and this satisfies the guaranty of equal protection.[7]

*Second.* The appellants contend the Act deprives them of property without due process of law because the tax is imposed, at least in part, upon things which are beyond the jurisdiction of Louisiana. The state may not tax real property or tangible personal property lying outside her borders; [8] nor may she lay an excise or privilege tax upon the exercise or enjoyment of a right or privilege in another state derived from the laws of that state and therein exercised and enjoyed.[9] But, as we have seen, the subject of the tax in question is the prosecution of a defined business activity within the State of Louisiana,—the conduct of a retail store which is a part of a chain under a single management, ownership or control,—a legitimate subject of a license or occupation tax. The measure of the exaction is the number of units of the chain within the

---

[6] Compare *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78; *Chesapeake & Ohio Ry.* v. *Conley*, 230 U. S. 513, 522; *Continental Baking Co.* v. *Woodring*, 286 U. S. 352, 371; *Fox* v. *Standard Oil Co.*, *supra*, 101, 102.

[7] *Tax Commissioners* v. *Jackson, supra*, p. 542; *Fox* v. *Standard Oil Co., supra*, 101.

[8] *Louisville & J. Ferry Co.* v. *Kentucky*, 188 U. S. 385; *Delaware L. & W. R. Co.* v. *Pennsylvania*, 198 U. S. 341; *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194.

[9] *Frick* v. *Pennsylvania*, 268 U. S. 473.

state,—a measure sanctioned by our decisions. The rate of tax for each such unit is fixed by reference to the size of the entire chain. In legal contemplation the state does not lay a tax upon property lying beyond her borders nor does she tax any privilege exercised and enjoyed by the taxpayer in other states. The law rates the privilege enjoyed in Louisiana according to the nature and extent of that privilege in the light of the advantages, the capacity, and the competitive ability of the chain's stores in Louisiana considered not by themselves, as if they constituted the whole organization, but in their setting as integral parts of a much larger organization. We cannot hold that this privilege is unaffected by the status of the Louisiana stores as members of such a chain or that recognition of the advantages and capacities enjoyed by them as a result of that membership is forbidden in classifying them for progressive increase of rate. Such classification is not in legal effect the taxation of property or privileges possessed or enjoyed by the taxpayer beyond the borders of the state.

*Maxwell* v. *Bugbee,* 250 U. S. 525, goes far to sustain the validity of the Act.[10] The exaction in the present case is even less open to the accusation of extra-territoriality than the one there under consideration, because here it cannot be claimed, as it was there, that not alone the rate, but to some extent, the measure of the tax, is affected by the enjoyment of extra-state privileges.

Our decision need not, however, rest on conceptions of subject, measure and rate of tax. Much broader considerations touching the state's internal policy of police sustain the exaction. The tax is laid solely upon intrastate commerce.[11] In the exercise of its police power

---

[10] See the comment on *Maxwell* v. *Bugbee* in *Frick* v. *Pennsylvania*, 268 U. S. at p. 495.

[11] *Nathan* v. *Louisiana*, 8 How. 73, 80–81; *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342, 360.

426

the state may forbid, as inimical to the public welfare, the prosecution of a particular type of business,[12] or regulate a business in such manner as to abate evils deemed to arise from its pursuit.[13] Whatever a state may forbid or regulate it may permit upon condition that a fee be paid in return for the privilege,[14] and such a fee may be exacted to discourage the prosecution of a business or to adjust competitive or economic inequalities.[15] Taxation may be made the implement of the exercise of the state's police power;[16] and proper and reasonable discrimination between classes to promote fair competitive conditions and to equalize economic advantages is therefore lawful.[17]

If, in the interest of the people of the state, the legislature deemed it necessary either to mitigate evils of com-

[12] *License Cases,* 5 How. 504; *Mugler* v. *Kansas,* 123 U. S. 623, 662–663; *Williams* v. *Arkansas,* 217 U. S. 79; *Central Lumber Co.* v. *South Dakota,* 226 U. S. 157, 162.

[13] *Ozan Lumber Co.* v. *Union County Bank,* 207 U. S. 251; *Engel* v. *O'Malley,* 219 U. S. 128, 137.

[14] *Wiggins Ferry Co.* v. *East St. Louis,* 107 U. S. 365, 373, 374–376.

[15] *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89, 92–95; *Reymann Brewing Co.* v. *Brister,* 179 U. S. 445, 453; *Williams* v. *Fears,* 179 U. S. 270, 276; *W. W. Cargill Co.* v. *Minnesota,* 180 U. S. 452, 469; *McCray* v. *United States,* 195 U. S. 27, 60; *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563, 573; *Quong Wing* v. *Kirkendall,* 223 U. S. 59, 62; *Brazee* v. *Michigan,* 241 U. S. 340, 342; *Alaska Fish Co.* v. *Smith,* 255 U. S. 44; *Liberty Warehouse Company* v. *Tobacco Growers Assn.,* 276 U. S. 71, 96; *Sproles* v. *Binford,* 286 U. S. 374, 394; *Magnano Co.* v. *Hamilton,* 292 U. S. 40, 43, 44; *Fox* v. *Standard Oil Co.,* 294 U. S. 87, 100; *Sonzinsky* v. *United States,* 300 U. S. 506.

[16] *Gundling* v. *Chicago,* 177 U. S. 183, 188, 189; *Rast* v. *Van Deman & Lewis Co., supra,* 368; *Compañia General* v. *Collector,* 275 U. S. 87, 95, 96; *Sonzinsky* v. *United States, supra.*

[17] *Bradley* v. *Richmond,* 227 U. S. 477, 480, 484; *Hammond Packing Co.* v. *Montana,* 233 U. S. 331, 333–334; *Rast* v. *Van Deman & Lewis Co., supra;* p. 368; *Tanner* v. *Little,* 240 U. S. 369, 382–383; *St. Louis Poster Advertising Co.* v. *St. Louis,* 249 U. S. 269, 274.

petition as between single stores and chains or to neutralize disadvantages of small chains in their competition with larger ones, or to discourage merchandising within the state by chains grown so large as to become a menace to the general welfare, it was at liberty to regulate the matter directly or to resort to the type of taxation evidenced by the Act of 1934 as a means of regulation. The appellants, by incorporating in some other state, or by spreading their business and activities over other states, cannot set at naught the public policy of Louisiana. The claim is, essentially, that even if local evils flow from the appellant's methods the state cannot control those evils because its power is limited to conditions created by the members of the chain found within the state. The conclusion is that the state must treat these stores as if they were something different from what they really are, since to do otherwise would be to reach beyond the borders of Louisiana for the measure of the tax. The argument answers itself. The policy Louisiana is free to adopt with respect to the business activities of her own citizens she may apply to the citizens of other states who conduct the same business within her borders, and this irrespective of whether the evils requiring regulation arise solely from operations in Louisiana or are in part the result of extra-state transactions. It is not a denial of due process to adjust such license taxes as are here involved to meet the local evil resulting from business practices and superior economic power even though those advantages and that power are largely due to the fact that the taxpayer does business not only in Louisiana but in other states.

*Third.* Montgomery Ward & Company, one of the appellants, filed a bill of intervention. In addition to the objections already considered it contends that, as applied to its business, the act of 1934 constitutes an interference with and a regulation of interstate commerce forbidden by Art. I, § 8 of the Constitution. The allegation is that

this appellant owns and operates five stores in Louisiana and four hundred and eighty-six others spread over forty-five states; owns and operates nine mail order houses located in states other than Louisiana and nineteen so-called order stations located at various points outside Louisiana, the mail order houses and order stations all being exclusively engaged in interstate commerce. The order stations are installed in rented spaces with one regular employe at each and with a stock of samples, the only business transacted in them being the taking of orders which are transmitted to, and filled by, the mail order houses. With respect to the operation of the act the bill states: "Intervenor alleges that while the present administrative interpretation of said Act 51 of the Louisiana Legislature of 1934 apparently limits the operation of said Act to the intervenor's retail stores, the words 'mercantile establishments' used in said Act apparently include the aforesaid mail order houses and order stations owned and operated by the intervenor. Said Act does not by its terms exclude from its operation said establishments engaged in interstate commerce, and, therefore, violates the Commerce Clause of the United States Constitution . . ."

The trial court found the facts as follows:

"Montgomery Ward & Company, an Illinois corporation, operates 9 mail order establishments engaged in filling orders received from points in the United States and foreign countries through the mail. None of these mail order establishments are situated in Louisiana. The Company also has 19 mail order offices, none of which are situated in Louisiana; 17 Class A department stores carrying a complete line of general merchandise, none of which are situated in Louisiana; 456 Class B retail stores of limited size and carrying a limited line of merchandise, of which 5 are located in Louisiana; and 16 Class C stores

devoted exclusively to the sale of hardware, household appliances, automobile tires and tubes, of which none are located in Louisiana. The 5 Louisiana Class B stores take orders to be filled by mail from the Company's mail order establishment located at Forth Worth, in addition to selling merchandise at retail at its place of business to the public."

As a conclusion of law the court held "The claim [of the intervenor] does not merit serious consideration. The statute by its express terms applies only 'where goods, wares, merchandise or commodities of every description whatsoever are sold or offered for sale at retail.' "

Error is assigned to the District Court's conclusion and the appellant insists that the statute is bad because it imposes a single and indivisible tax for the privilege of conducting a business both interstate and intrastate, partly measured by interstate operations wholly extrastate.

As respects the regulation of interstate commerce the intervenor's bill is premature and without equity. The statute was approved July 12, 1934, and became effective for the calendar year 1935 and subsequent years. February 27, 1935, both the bill of the Great Atlantic & Pacific Tea Company and Montgomery Ward & Company's intervening bill were filed. The record discloses no rules or regulations promulgated by the appellee Supervisor of Public Accounts and no ruling by any responsible state official as to which of Montgomery Ward & Company's establishments are to be included in reckoning the total of its retail stores. For all that appears neither its mail order houses, nor its order stations, nor its department stores, will be included in the computation.

It is manifest that Montgomery Ward & Company cannot upon mere supposition that the Act will be unconstitutionally construed and applied in respect of its five stores in Louisiana obtain an advisory decree that the

Act must not be so administered as to burden or regulate interstate commerce.[18]

The judgment of the District Court is

*Affirmed.*

MR. JUSTICE VAN DEVANTER and MR. JUSTICE STONE took no part in the consideration or decision of this case.

MR. JUSTICE SUTHERLAND, dissenting.

MR. JUSTICE McREYNOLDS, MR. JUSTICE BUTLER and I are of opinion that the statute here involved is invalid as constituting a denial of the equal protection of the laws and an attempted exertion of the legislative power of the state with respect to properties and businesses located beyond its teritorial borders.

In *Tax Commissioners* v. *Jackson,* 283 U. S. 527, this court sustained the validity of an Indiana statute imposing a chain-store tax graduated according to the number of stores under the same general management. But there, the amount of the tax in respect of each store was graduated according to the whole number of stores *within the State.* Here, the amount of the tax is not limited by the number of stores operated within the state, but is increased by including stores operated in other states and foreign countries. If, for example, the owner of a single store in Louisiana has fewer than ten stores outside the state, he pays a tax of $10; but if he operates as many as ten stores in other states or in Canada, he is required to pay upon his store in Louisiana $15 annually. And as the stores outside the state further increase in number, the tax upon the single store in Louisiana rises by successive steps until it reaches, in the highest bracket, where the

---

[18] Compare *Hodge Co.* v. *Cincinnati,* 284 U. S. 335, 338; *Continental Baking Co.* v. *Woodring,* 286 U. S. 352, 369; *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, 324.

stores outside exceed 500 in number, the sum of $550 upon the single Louisiana store.

We thought the classification in the *Jackson* case, although confined to stores within the state, was so arbitrary as to render the tax invalid under the equal protection clause of the Fourteenth Amendment, and, together with MR. JUSTICE VAN DEVANTER, who takes no part in this case, set forth our views at length in a dissenting opinion. 283 U. S. 543 *et seq.* We rest upon what was there said, without repeating it, not for the purpose of again challenging the decision in the *Jackson* case, but because what we said applies more plainly to the variant facts of the case now under consideration. We thought then that the *Jackson* case was wrongly decided, but, accepting it as authoritative, it seems to us certain that it goes to the extreme verge of the law, and, for the reasons given in our dissenting opinion, equally certain that the present decision goes far beyond the verge. We add a few words in support of that view.

The Indiana law effected a discrimination between two classes—namely, operators of chain stores and operators of independent stores within the boundaries of the state, without reference to any stores outside. The Louisiana law effects a discrimination between two members of the same class—namely, chain-store operators within the state, where the only difference between them is that one also operates stores in other states and in Canada, while the other does not. Thus, for illustration, if A operates eleven stores in Louisiana, doing a business of $10,000,000 per year, and has none outside, he pays $15 for each store, or a total of $165, while if B operates eleven stores in Louisiana, and happens to have 490 stores distributed among the remaining 47 states of the Union and foreign countries, doing a total business of $5,000,000 per year, he is compelled to pay $550 upon

each of his eleven stores, or a total of $6,050—36 times the amount of the tax paid by A. This enormous difference is based upon a state of affairs wholly external to the State of Louisiana, the effect of which upon the Louisiana business is a matter of bald conjecture, varying widely, as it must, with the localities in which the foreign stores are to be found and the local circumstances by which their operations are affected.

Moreover, if the Louisiana statute be valid, other states in the Union may pass similar acts; and it is not improbable that they will. And if they do so, a remarkable situation will be brought about. Let us suppose, for example, that ten additional states, ranging from Maine to California, adopt the Louisiana form of legislation. In each of the states, including Louisiana, a given operator has ten stores, making 110 in all. In that case he will pay in each state a tax based not upon the operation of ten stores, but on the operation of 110. Instead, therefore, of paying in each state $100 upon the basis of $10 for each of the ten stores, he will pay $500 upon the basis of $50 for each of the ten stores. If he should then put into operation sixteen additional stores, let us say in Canada or Norway, he would immediately bring himself into the bracket where the tax upon each store is fixed at $100—thus increasing his total taxation in the eleven states from $5,500 to $11,000, in virtue of these comparatively small operations in a foreign country, the effect of which, if any, in respect of competitive advantages in any one of the eleven states could hardly be described otherwise than as purely speculative.

The exaction here involved is not a tax upon Louisiana property or business, but is essentially a penalty imposed upon an operator of business wholly beyond the reach of the law of that state. We are not able to concede that it lies within the province of one state to thus indirectly

penalize a method of doing business in another state, which it may be the policy of the latter to permit or, indeed, encourage. Compare *Baldwin* v. *G. A. F. Seelig,* 294 U. S. 511, 521–524. The foregoing illustrations, and others which might be supplied, in our opinion expose the arbitrary character of the classification and the consequent invalidity of the exaction imposed in virtue of it.

The sole fact that a Louisiana operator has opened additional stores in other states or in Canada or Norway, affords, we think, no valid basis for imposing upon him an enormously-increased tax from which his competitors, similarly circumstanced in all other respects, are exempt. The claim that thereby the balance of competitive advantage has been disturbed, is so fanciful as to furnish no basis for such legislation grounded in any policy or object of state taxation. The court below thought that to consider the number of stores outside the state was competent for the purpose of determining the value of the privilege of operating each store within the state. But the fallacy of that view as applied to the present case is demonstrated by the facts as found by that court— namely, that operations of chain stores "vary greatly from section to section and from state to state because of differences in local conditions, economic and otherwise, freight rates added to cost, remoteness from headquarters and executive management, increase in difficulty of supervision, local competition and other factors. Conditions as to sales and profits vary greatly in all classes of stores according to the section of the country in which they are located." An attempt to fix the extent of the competitive advantage which will inure in favor of a business in Louisiana or the value of the privilege of operating it upon a basis so shifting and uncertain, seems to us an utterly futile undertaking. It is nothing more than an effort to reach a conclusion upon an assumed major premise, where the minor premise is unknown.

434

In *Stewart Dry Goods Co.* v. *Lewis,* 294 U. S. 550, this court held invalid a state act imposing a graduated tax measured by the amount of gross sales. We held that it could not be sustained as an excise on the privilege of merchandising, because there was no reasonable relation between the amount of the tax and the value of the privilege, and no such relation between gross sales and net profits as would justify the classification. The tax was denounced (p. 557) as being "whimsical and arbitrary, as much so as would be a tax on tangible personal property, say cattle, stepped up in rate on each additional animal owned by the taxpayer, or a tax on land similarly graduated according to the number of parcels owned." We said (pp. 558–559) "that the gross sales of a merchant do not bear a constant relation to his net profits; that net profits vary from year to year in the same enterprise; that diverse kinds of merchandise yield differing ratios of profit; and that gross and net profits vary with the character of the business as well as its volume." It appeared from the testimony that great variations existed within each class selected for comparison; that in some classes, representing a greater amount of sales, there was a smaller net profit than in others having less aggregate sales. To the contention that the tax was a rough and ready method of taxing gains, less complicated and more convenient of administration than an income tax, we answered (p. 560), "The argument is in essence that it is difficult to be just, and easy to be arbitrary. If the Commonwealth desires to tax incomes it must take the trouble equitably to distribute the burden of the impost."

These observations apply to the case in hand; for although the taxes imposed by the statutes involved are different, the vices are the same.