THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC., PROSECUTOR; THE ACME MARKETS, INC., PROSECUTOR; GIANT TIGER CORPORATION OF CAMDEN, NEW JERSEY, PROSECUTOR; THE FOOD FAIR, INC., PROSECUTOR, v. THE BOARD OF COMMISSIONERS OF THE CITY OF CAMDEN, DEFENDANT.

Argued January 17, 1939—Decided February 4, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For Great Atlantic and Pacific Tea Company, Inc., *Milton, McNulty & Augelli, John Milton, Caruthers Ewing* and *Feldman & Kittelle*.

For Acme Markets, Inc., *Bleakly, Stockwell & Burling (Henry F. Stockwell)*, and *Gilfillan, Gilpin & Brehman*.

For Giant Tiger Corporation, *Bleakly, Stockwell & Burling (Henry F. Stockwell)* and *Einhorn & Schachtel*.

For Food Fair, Inc., *Stein & Mandel* and *J. Emil Walscheid*.

For the defendant, *Firman Michel* and *William J. Shepp*.

BODINE, J. On April 14th, 1938, the Board of Commissioners of the city of Camden adopted an ordinance providing that no person, firm, or corporation should operate a self-service market without obtaining a license therefor. A self-service market was defined as follows: "Section 3. The term 'self-service market' as used herein is defined to mean: Any

store or other structure wherein food, foodstuffs, groceries, canned goods, soaps, powders or other merchandise are sold at retail by a system or plan wherein the said foods, foodstuffs, groceries, canned goods, soaps, powders or other merchandise are displayed or exposed for sale on shelves, stands, platforms or counters or in bins or aisleways, in such a manner that purchasers are invited and permitted to make a personal selection of the food or merchandise sought to be purchased and to take the same into their possession, and are provided with baskets, carts or containers in which the merchandise may be placed, and carried or carted to a counter, place or exit point, where employes or agents of those conducting the business calculate the total cost of the foods, foodstuffs, groceries, canned goods, soaps, powders or merchandise, and wrap or place the merchandise in bags, cartons or containers and receive payment from the customer."

The license fee fixed was $10,000 per year, and upon a conviction for a violation of the ordinance it was provided that a fine of not more than $200 or imprisonment not exceeding ninety days, or both, could be imposed by the police judge.

At the public hearing before the adoption of the ordinance a letter was read as follows: "We are in favor of a license fee of $10,000 to be imposed on Self-Service Food Markets. We believe this will be a protection to the neighborhood stores and advantage to our economic system."

Many individuals and organizations appeared in favor of the adoption of the ordinance and letters of protest were read from several of the prosecutors. The ban of the ordinance, it is to be observed, is upon the use of a basket or other container, personal selection of articles desired, the calculation of the total price of the goods selected and payment therefor before exit.

The Great Atlantic and Pacific Tea Company, Inc., has thirty retail stores in Camden. Three of the stores situate at the following addresses: 1618 Mt. Ephriam avenue, 1125 Haddon avenue and 2412 Federal street, fall within the ban of the ordinance. The merchandise in these three stores, of the same quality as that offered for sale in the other Atlantic

and Pacific stores, is offered at somewhat lower prices. The housewife finds a saving of four cents on twelve pounds of flour; one cent on a pound of coffee or sugar or soap, or butter. There are savings of importance in cereals, canned and fresh fruit, vegetables and other articles of daily use. The saving from a more economic operation of the store is passed on to the consumer. The system of merchandising however, is not new. For generations the residents of towns and cities in this country carried to, or had carried to, market the family market basket. It was filled with personal selections according to the needs and means of the household. Families with incomes below $2,000 are obliged to spend more than fifty per cent. of their income for food. Therefore, savings upon food are most welcome.

No Camden Atlantic and Pacific store does sufficient business to pay the license fee of $10,000. On the basis of the present profit rate it would require a business of $19,000 a week to meet the tax and none of the stores in the chain do any such amount of business.

The fixtures in the Mt. Ephriám avenue store are worth $1,200, the average inventory $4,000; the Haddon avenue fixtures $2,200, the average inventory $4,500; the Federal street store fixtures $5,000, the average inventory $5,500. All three stores were opened in 1938. Although there are baskets and self-service as to some of the items offered for sale, this is not so as to many other articles. In all of its Camden stores, the Atlantic and Pacific made gross sales of $519,242 from March 1st, 1938, to August 1st, 1938, a period of five months. Its net profit averages 1 per cent. of sales. If all the profits were diverted and the company still retained the baskets and the check-up before leaving in the three stores in question, it would still fail of meeting the tax by nearly $20,000 each year. In the other stores, without baskets and the cashier clerk at the exit, it is possible for the customer to select and place purchases upon a counter where the prices are listed and paid.

The defendant's depositions show a sorry picture of financial losses to independent grocers, butchers and operators of

delicatessen stores by reason of the advent of the chain store. There is, however, nothing to show that the self-service stores are more harmful than the chain store generally.

The Acme Markets, Inc., leases premises at 711-753 Pine street. It uses the self-service principle in the grocery department and falls within the ban of the ordinance. It does not do business in a sufficient volume at a profit to pay the tax.

The Giant Tiger Corporation of Camden, New Jersey, leases premises at Sixth street and Atlantic avenue, Camden. There are twenty-seven departments in the building. Prosecutor operates the grocery department, leasing all the other departments. When a customer enters the grocery department a basket may be picked up into which the commodities desired may be placed. The contents are checked and paid for before leaving. The customer although not obliged to take the basket finds them a convenience in shopping. The total profits from the enterprise would not meet the tax.

The Food Fair, Inc., operates a food store in a leased building at 1706 Federal street, Camden. It has invested about $15,000 in store fixtures and carries a like amount in inventory. The store opened the last week in January, 1938, and showed an average weekly turnover of stock of approximately $13,000 and a profit of less than one-third of one per cent. on the turnover. Prosecutor's store is divided into eight departments. Upon entering, the purchaser receives a card upon which purchases are entered by clerks. There is the banned self-service only in the grocery department where baskets or containers may be selected for use. The slips and payment to a cashier are not in themselves unique.

Merchants have heretofore exercised the greatest freedom in the manner of displaying merchandise, providing conveniences for their customers and in arranging a method by which bills may be conveniently paid. From the days of the country store and the local markets, the merchant has supposed that he had absolute freedom in merchandising methods, subject, of course, to reasonable regulation in the interest of the health and welfare of the consumer. Cafeteria and automatic vending of foods, confections and cigarettes have

long been in popular use. The ever increasing cost of living has enforced every economy which the individual can wisely exercise. Lower cost in many articles has often increased the use thereof resulting in greater production and employment. Freedom of enterprise produces consumer's benefits. In business nothing has ever been static.

The municipality under the Home Rule act has power to impose a license fee on stores used in the sale of meats, groceries and provisions which license fee may be for revenue. *R. S.* 40:52-1, 40:52-2. "Ordinances of regulation must be general in their applicability and not discriminatory." *Heetner* v. *Newark,* 12 *N. J. Mis. R.* 560. See, also, *Siciliano* v. *Township of Neptune,* 83 *N. J. L.* 158; *Nutley* v. *Brandt,* 12 *N. J. Mis. R.* 670.

The present ordinance regulates the manner in which a merchant may conduct his business. If part or all of his business is conducted on the self-service basis outlined, he is obligated to pay a license for revenue. The tax, and it is a heavy one, is levied on the plan of providing baskets or containers for goods displayed so as to invite and permit personal selection.

For years, prudent housewives have selected meats, fruits and vegetables with care. But, under the ordinance, if the articles selected are placed in a basket or container and carried to a counter or place of exit where the goods are checked and paid for, the store owner must pay a large tax, because he has supplied intending purchasers with a basket or container to facilitate the handling of the articles selected. The ordinance is a most unreasonabe burden upon a business man because he has selected an old and fair method of selling his goods.

In the case of *Giant Tiger* v. *Trenton,* 11 *N. J. Mis. R.* 797; affirmed in 113 *N. J. L.* 34, an ordinance providing a license fee for each concession in a building used in part as a food market was sustained. Manifestly, such an ordinance was reasonable and well within the power of the municipality.

"A municipality which seeks to exercise the powers conferred by the act of 1890, respecting licenses, is not bound

to impose a license fee upon every business mentioned in the statute. It may select such of them as it deems proper subjects for license, and, so long as there is no discrimination in the imposition of the license fee, its action cannot be successfully challenged." *Kolb* v. *Boonton,* 64 *N. J. L.* 163; *Van Der Vliet* v. *Newark,* 112 *Id.* 39.

It is clearly shown by the proofs that the payment of the tax in every instance could be effected only by substantially raising the prices to consumers, or by an exhaustion of capital. A municipality cannot, by the imposition of a license tax for revenue, confiscate the property of one merchant merely because he offers his merchandise for sale in one manner rather than in another. The municipality may not require its residents to forego the exercise of an economy in order that a group of merchants, unwilling to take advantage of economy and management, may prosper.

An ordinance arbitrary and illusory falls. *Haddon Heights* v. *Hunt,* 90 *N. J. L.* 35; *affirmed,* 91 *Id.* 696. The present Camden ordinance, aside from being confiscatory, is arbitrary to say the least. A grocer providing baskets is taxed $10,000 a year additional and one who does not is $10,000 a year better off. There is no sound basis for the distinction. The only purpose is to regulate the method of the sale of goods. An unreasonable distinction between merchants engaged in the same business voids the ordinance. *Hoffman* v. *South River,* 13 *N. J. Mis. R.* 618. The classification in question has not the slightest resemblance to classification predicated upon a desire to adjust competition or economic inequalities between merchants sustained in *Atlantic and Pacific Tea Co.* v. *Grosjean,* 301 *U. S.* 412.

As before noted, one of the prosecutors of this writ has many stores in Camden. For some it must pay the license fee of $10,000; for others it has no such obligation. The one store has no economic advantage over the other, the saving effected in the sale of the merchandise is passed to the consumer.

Of course, the legislature has not limited the amount of a license fee to be exacted. But the municipality must reason-

ably exercise the power to license business. It cannot arbitrarily discriminate between those engaged in the same business merely because one merchant chooses one method for making sales and another fails so to do.

The ordinance will be set aside, with costs.