FEINSTEIN, D. B. A., ETC., PLAINTIFF, *v.* WHITEHALL (CITY) ET, DEFENDANTS.

Common Pleas Court, Franklin County.

No. 218070.   Decided February 11, 1964.

*Messrs. Harris, Lias & Strip,* for plaintiff.
*Mr. Paul J. Haytcher,* city solicitor, *Mr. Louis Bower,* asst. city solicitor, for City of Whitehall.

SATER, J.   Both temporary and permanent injunctive relief in this case is sought by plaintiff against defendants, City of Whitehall, its mayor, its director of public safety, and its chief

of police. Plaintiff is an individual doing business under the name "D & D Billiard"; he operates in Whitehall what is known in common parlance as a pool room. His grievance is that shortly after having obtained early in 1963 a special zoning permit from the proper administrative authorities of that city to operate a pool room, having immediately thereafter gone in to that business in Whitehall, and having, as he says, obligated himself as a result thereof, to expend the sum of $10,000.00 in his new business, the City soon thereafter enacted its ordinance No. 53-63 which limits the licensing of a pool room operation to anyone who is "a person who has not been convicted of a felony within seven years prior to the (his) application."

Having pleaded guilty in that seven year span of time to a felony in this County, plaintiff cannot meet the requirements of the ordinance. His new-born business thus disappears. He claims, to support his case, irreparable financial injury and loss, the threat and hazard of repeated arrests under the penal sections of the Ordinance, and that the Ordinance is retrospective, unreasonable, unjust and unconstitutional under the Constitution of Ohio and Amendment XIV of the Constitution of the United States. A temporary restraining order was granted to hold matters in the status quo. But in limine we may note that the retrospective, or retroactive, element of plaintiff's case was long ago settled adversely to him by the famous *Slaughter House Cases*, 16 Wall., 36, 21 L. Ed., 394; 111 United States, 746, 28 L. Ed., 585, 587-588, which after striking down this asserted claim, went on to say that exterminated financial investment is not a consideration against repeal of a statutorily granted right.

At the trial on the merits, the facts were stipulated, the chief of which have already been set out herein, and the case was held for submission of briefs, and for consideration and determination. A very significant fact so stipulated was:

"It is further stipulated and agreed that the plaintiff has not perfected any appeal under Section 2506.01 through 2506.04 (Revised Code, of course), which is entitled 'Appeals from Orders of Administrative Officers and Agencies'; nor has there been any action filed by the plaintiff under the Declaratory Judgment Act (of the Code again); nor has any suit been filed other than this particular action."

The stipulation and the three briefs subsequently filed turn

on just two points, which we will discuss in this turn; (1) the applicability and non-use thereof by plaintiff of the provisions and safeguards of Ohio's Administrative Procedure Act; (2) the constitutionality of Ordinance No. 53-63, supra.

1. *The Administrative Procedure Act.*

The Ohio Administrative Procedure Act applicable to all state officers, agencies and departments, is found in Chapter 119, Revised Code. Its counterpart applicable to any officer, tribunal, authority, board, bureau, commission, department or other division of any political subdivision of the State is found in Chapter 2506, and made procedurally effective by Chapter 2505, both of Revised Code. Supersedeas bond, for example, is provided for in Sections 2505.09, 2505.14, 2505.16 and 2505.17, Revised Code; they provide one in plaintiff's position just as much protection as does the temporary restraining order now in effect in this case. Also, under these two chapters, plaintiff may make his record, and may press his claim through as many courts as he wishes 'til he reaches the top.

Admittedly, plaintiff failed to make use of this procedure beyond its initial stage, and that was very possibly accidental only. The City of Columbus utilized these laws, viz. Chapters 2506 and 2505, Revised Code, in our recent case, *City of Columbus* v. *City of Upper Arlington*, No. 218,734. Plaintiff should have followed the same procedure. See *Benjamin* v. *Columbus*, 167 Ohio St., 103, *Eggers* v. *Morr*, 162 Id., 521, *Akron* v. *Klein*, 171 Id., 209, *Ohio* v. *Kidd*, 167 Id., 521, *W. & H. Rentals* v. *Garfield Heights*, 81 Ohio Law Abs., 605. For his failure to do so, his petition herein must be and it hereby is ordered dismissed at his costs.

We turn now to the second point in this case.

2. *The Constitutionality of Whitehall Ordinance 53-63*

But in order to rule on this case on the merits, thereby saving the need for further litigation, let us stretch our equity jurisdiction to the needed necessary limit. First let us assume that all necessary, though not all proper parties are presently before the Court. Then let us assume that plaintiff has undertaken the inescapable financial obligations that he alleges. Then let us assume that the present temporary restraining order in this case is the simple equivalent of a Procedure Act supersedeas bond. Then let us assume that the provisions of Section

2506.01, Revised Code, are permissive rather than mandatory. Then let us note that equity will not leave undone that which ought to be done. Then, with this congeries of facts and assumptions, let us proceed.

Every branch of our government, national, state and local, has its own share of that expression and power, often used but seldom defined, called the "police power." Each such branch of government acting in the field allocated to it has that power to use unchallenged and unchallengable in its field and jurisdiction for the health, welfare, morals or safety of those within its geographic and governmental and geographic limits. It rests on the maxim: Salus populi suprema lex.

Of necessity that police power is not susceptible to precise definition or limitation, not only because conditions vary from community to community and area to area, but also because there is a range of ways and methods available to the proper authority to meet those conditions. Thus, "police power" is not a precisely measurable portion of government. It is a power extending to all public needs; its utilization encompasses a penumbra in which legislative and executive power is uncontrolled so long as it is just and reasonable, and in that penumbra the courts may not substitute their judgment for that of the holders of the power. Thus, we may not say that Ordinance 53-63 is unconstitutional because it is more strict than comparible ordinances in nearby communities, and consequently strike it down. Nor, as a collateral matter, may we accept and follow the authorities from Ohio and elsewhere cited us by plaintiff because none of them, so far as we know and can find, was ever carried on to the United States Supreme Court which is the final arbiter of "police power," even had that question been timely made, - - before the zoning committee or the City Council of Whitehall.

Nor are we impressed by plaintiff's briefed assertion that in recent years pool rooms and billiard parlors are becoming more genteel; for its area Whitehall certainly does not agree, and therein we may not substitute our judgment in the regulatory penumbra vested in Whitehall's authorized officials. It is not the function of courts to adversely "second guess" them at all times on their day to day local problems.

There is no question that the police power may be utilized to license, to regulate, and even to exterminate businesses if done within the maxim referred to above, and is applied equally to all in the same situation. That plaintiff here is presently the only one affected is per se beside the point. Pool rooms, billiard halls, or a combination of the two, are not exempt from this power any more than are restaurants, taverns, rest homes, as well as a host of other seemingly innocuous occupations.

In *State, ex rel. etc.*, v. *Carrel*, 99 Ohio St., 285, a flat prohibition of pool room licenses to aliens was upheld. The same stand was taken in *Murphy* v. *California*, 225 United States, 621, 628-631, 56 L. Ed., 1229, 1232-1233 in dealing with the Fourteenth Amendment; in that case the Court spoke despite recognition that such occupation is not a nuisance per se; the Court also noted that financial loss to the complainant is not to be considered. Parallel cases pertaining to other occupations not per se nuisances are *Barrett* v. *Indiana*, 229 United States, 26, 28-29, 57 L. Ed., 1050, 1052 (penalizing improper entries to coal mines), *Toyota* v. *Hawaii*, 226 United States, 184, 192, 57 L. Ed., 180, 184 (peddlers' license of $60.00 in Honolulu, $15.00 elsewhere all through the islands), *Breard* v. *Alexandria*, 341 United States, 622, 632, 95 L. Ed., 1233, 1242-1243 (flat prohibition of peddlers and canvassers who call without prior invitation or request), and *A. & P. Tea Co.* v. *Grosjean*, 301 United States, 425-426, 81 L. Ed., 1193, 1201 (a tax on chain stores graduated upward as the number of branch stores increases). We do not know what comfort plaintiff has found in relying and citing *Nebbia* v. *New York*, 291 United States, 502, 78 L. Ed., 940, wherein a regulatory milk price variation was approved; the Court in that case further noted not only that neither property nor contract rights are absolute but also that the Fourteenth Amendment does not prohibit regulation made in the public welfare. We do not find Whitehall Ordinance No. 53-63 to be unconstitutional, unjust, unreasonable, abusive of discretion or otherwise unlawful.

Thus both procedurally and on the merits, separately and severally, plaintiff's case fails. His petition must be dismissed at his costs, and final decree rendered for each defendant.

Submit entry according to the foregoing.