EDWARDS, Judge.
This appeal involves the interpretation of Louisiana’s Chain Store Tax[1] LSA-R.S. 47:1121[2] et seq.
In November of 1974, the Collector of Revenue for the State of Louisiana notified the Jack Eckerd Corporation (Eckerd), a Florida corporation not qualified to do business in the State of Louisiana, that it was being assessed for deficiencies in chain store tax for the years 1971 through 1974 in the amount of $72,610.00, plus interest.
Eckerd filed a petition with the Board of Tax Appeals on December 26, 1974, seeking to have the assessment vacated on the following grounds:
“(A) The Chain Store Tax, Louisiana Revised Statutes 47:1121 et seq asserts a tax which is not applicable to petitioner;
(B) Alternatively, and solely in the event that the foregoing objection is not sustained, petitioner asserts that the base for the chain store tax should not include stores which are not compatible in size or type of merchandise sold.”
Following a hearing before the Board, judgment was rendered on August 19,1976, upholding the original assessment to the extent of $69,750.00 less a credit of $4,240.00 or a total of $65,510.00 plus interest.
On September 17, 1976, Eckerd filed a petition in the Nineteenth Judicial District Court seeking review of the Board’s decision. The district court rendered judgment on April 7, 1977, affirming the previous judgment of the Board of Tax Appeals.
Eckerd has brought this appeal from the adverse judgment of the district court.
The record indicates that Eckerd has forty-one (41)[3] wholly owned subsidiary corporations in Louisiana. Each of these Louisi *841 ana corporations owns one to three retail drug stores in this state.[4] These various retail drug stores are managed by another Eckerd subsidiary, Brown’s Thrift City Wholesale Drugs, Inc., (Brown). Brown is also a Louisiana corporation and 100% of its capital stock is owned by Eckerd. Neither Brown nor Eckerd directly own any retail drug stores in Louisiana.
Eckerd contends that the Collector’s assessment is erroneous as Eckerd neither operates nor maintains any chain stores in Louisiana.
The chain store tax imposes a tax liability on any person who is in the business of operating or maintaining a chain store in this state.[5] LSA-R.S. 47:1121. A chain store is defined by the statute as a store where goods etc. of every description are sold or offered for sale at retail, and which is operated as a part of a group or chain under the same general management, supervision, ownership or control. A “person” within the meaning of the statute includes a corporation. LSA-R.S. 47:2(2).
The applicability of the tax in the instant case rests upon a factual determination of whether or not Eckerd was in the business of operating or maintaining a chain of retail drug stores in this state during the years in question. We respond to this in the affirmative.
The evidence adduced by the Collector at the hearing before the Board consisted mainly of the testimony of Mrs. Carol Bor-delon, an auditor with the State Department of Revenue who had conducted an audit in August of 1974 of Jack Eckerd Corporation in connection with chain store taxes. Mrs. Bordelon stated that her audit disclosed that numerous management functions for[1] the various drug stores in Louisiana were being performed by Eckerd. She further stated that all records for the various corporations and stores were kept in Florida at Eckerd’s home office.
Mrs. Bordelon testified that all the accounting services for the Louisiana stores were performed by Eckerd, that Eckerd maintained a complete computer data center to perform the various accounting, purchasing, record keeping and inventory services for the various stores. She further testified that Eckerd prepared the tax reports for the individual stores and, in addition, cumulated and paid the sales taxes and other taxes required of the various stores with one check drawn on its own account. She stated that Eckerd provided the internal auditing services, legal services and advertising services for all the stores. She stated that while most of the cost of services performed by Eckerd were allocated against the subsidiaries, some, including corporate tax department services, corporate counsel services, financial vice-president services and high powered accountant services, were not allocated. Finally, Mrs. Bordelon testified that the ultimate decision making authority regarding new stores and their locations rested with Eckerd, who maintained a staff charged with expansion.
Additional testimony at the hearing revealed that substantially all the funds generated by the various stores are automatically transferred to one of several Eckerd accounts in Florida. From these accounts, Eckerd pays the payroll expenses and purchasing expenses of the various stores.
Eckerd offered the testimony of Anthony Spedale, Brown vice-president and chief administrative officer, to explain the chain-of-command with regard to the Louisiana stores. Spedale stated that Brown, not Eckerd, hires and fires the pharmacists, managers, and staff for each store in Louisiana; controls the liquor licenses in the Louisiana stores; and controls the hours of operation for each Louisiana store.
However, Spedale conceded that some merchandise for the Louisiana stores is supplied from an Eckerd subsidiary in Houston. Spedale further conceded that he is directly responsible to the divisional manager of Eckerd for the operation of the Louisiana stores. Additionally, Spedale conceded that *842 he receives miscellaneous operational guidelines, which originate from regional or divisional conferences of the managers of the various Eckerd subsidiaries.
The Board concluded, based on all the evidence before it, that Eckerd was in fact “operating or maintaining” the Louisiana stores through the performance of various management functions; and that this activity subjected Eckerd to chain store tax liability. The lower court affirmed. We agree. We find that there is ample evidence in the record to support the conclusion. Canter v. Koehring Company, 283 So.2d 716, (La.1973).
Finally, Eckerd argues that the drug stores in Louisiana fall into distinct categories; one composed of “full line stores” and the other containing “minisize stores.” Eckerd cites the case of Great Atlantic and Pacific Tea Company v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193 (1937), in support of its contention that the Collector must treat the two types of stores in Louisiana as separate categories, applying different chain store tax bases to each. We find the A&P case inapposite on this point.
We can find nothing in the statute or in Louisiana law to substantiate the distinction asserted by Eckerd. On the contrary, the clear wording of LSA-R.S. 47:1122 states that the tax “shall be based on the number of stores or mercantile establishments included under the same general management, supervision, ownership or control . . . ”
We therefore reject Eckerd’s contention as all the stores in question were under 'the same control.
For the above reasons, the judgment appealed is affirmed at appellant’s cost.
AFFIRMED.

. The Chain Store Tax was repealed by La. Acts 1974, No. 706, § 1. The present suit involves taxable years prior to the repeal.

. Prior to its repeal, LSA-R.S. 47:1121 provided:
“Because of the advantages accruing from the operation of multiple stores wherever situated, and because of the basic difference inherent in such character of operation, there is hereby levied an annual license tax for the year 1951 and for each subsequent year upon each person engaged in the business of operating, or maintaining, as part of a group or chain, any store or stores in this state where goods, wares, merchandise or commodities of every description whatsoever are sold or offered for sale at retail under the same general management, supervision, ownership or control, commonly known as branch or chain stores.
The license herein prescribed shall be in addition to ad valorem taxes and other licenses prescribed in this Title or any other laws of this state.” (emphasis supplied)

.There were 25 Louisiana subsidiaries in 1971; 32 in 1972; 37 in 1973; and 41 in 1974.

. There were 43 stores in Louisiana in Z 971; 49 in 1972; 55 in 1973; and 59 in 1974.

. Ownership is not an essential element for application of the tax.