Susan Lee **WEISSINGER**, et al.,
Plaintiffs-Appellants,

v.

James C. **WHITE**, et al.,
Defendants-Appellees.

No. 83–7571.

United States Court of Appeals,
Eleventh Circuit.

June 1, 1984.

---

Edward Still and David Vann, Birmingham, Ala., for plaintiffs-appellants.

W. Stanley Gregory, Sp. Atty. Gen., Montgomery, Ala., for defendant-appellee Boswe.

Before FAY and HENDERSON, Circuit Judges, and BOYLE *, District Judge.

ALBERT J. HENDERSON, Circuit Judge:

The primary issue in this appeal centers on the constitutionality of the present Alabama ad valorem property tax statutes. In their complaint filed in the United States District Court for the Middle District of Alabama, the appellants attacked the validity of the state taxing scheme on both federal and state constitutional grounds. The court rejected the federal constitutional challenge and declined to exercise pendent jurisdiction over the state constitutional claim. Finding no error in the district court's substantive adjudication or any abuse of discretion in its refusal to exercise pendent jurisdiction, we affirm.

The genesis of the present controversy was a 1969 class action in the same court seeking to set aside the Alabama ad valorem tax system as it then existed. *See Weissinger v. Boswell*, 330 F.Supp. 615 (M.D.Ala.1971). In that case, a three-judge district court concluded that the ad valorem tax laws were being administered in violation of the equal protection clause of the fourteenth amendment and Alabama law.

Although at that time, the Alabama constitution specified that all property was to be assessed at an equal ratio of its fair market value, the evidence disclosed that actual assessment rates varied from approximately nine to thirty percent. Consequently, the court declared § 17(1) of Title 51 of the Alabama Code [1] unconstitutional and ordered all taxable property to be assessed at the fixed rate of sixty percent of the fair market value. [2]

Realizing that compliance with the provisions of the old constitution would have an unduly burdensome effect on the state taxpayers, the Alabama legislature responded by enacting new tax laws. First, the legislature passed Amendment 373 to the Alabama Constitution which created four classes of taxable property, each with a different assessment ratio. [3] Class III, which consists of farm, timber, residential and historic property, is of focal concern in this appeal because subsection (j) of amendment 373 specifies that taxpayers owning this type of property could opt to have it assessed at "current use" rather than "fair market" value. [4] Subsection (j) does not define current use value, however, but instead authorizes the legislature to formulate procedures by which to compute it. [5]

---

* Honorable Edward J. Boyle, Sr., U.S. District Judge for the Eastern District of Louisiana, sitting by designation.

1. Section 17(1) provided that:
   *Assessment rate.*—All taxable property within this state shall be assessed for the purpose of taxation not to exceed thirty percent of its fair and reasonable market value.
   ALA.CODE Title 51, § 17(1) (Supp.1969).

2. The predecessor statute purported to have been repealed by § 17(1), the code section found invalid, provided for the sixty percent rate. ALA.CODE Title 51, § 17. Ala. Acts 1935, No. 194, § 6, at 263.

3. Class I. All property of utilities used in the business of such utilities.
   Tax Rate: 30%
   Class II. All property not otherwise classified.
   Tax Rate: 20%
   Class III. All agricultural, forest and single-family owner-occupied residential property, and historic buildings and sites.
   Tax Rate: 10%

   Class IV. All private passenger automobiles and motor trucks of the type commonly known as "pickups" or "pickup trucks" owned and operated by an individual for personal or private use and not for hire, rent or compensation.
   Tax Rate: 15%

4. Subsection (j) provides that:
   Class III property shall, upon application by the owner of such property, be assessed at the ratio of assessed value to the current use value of such property and not the fair and reasonable market value of such property.

5. Subsection (j) states in pertinent part:
   The legislature may enact laws uniformly applicable to the state and all counties, municipalities and other taxing authorities establishing criteria and procedures for the determination of the current use value of any eligible taxable property and procedures for qualifying such property for assessment at its current use value.

Concurrent with the proposal of amendment 373, the legislature adopted Act 135 [6] to become effective upon ratification of the amendment. Act 135 defines current use as the value of the property based on its present use, without regard to potential uses.[7] Shortly after its implementation, Act 135 was repealed by the passage of Act 82–302 [8] which directs that current use valuation be made by employing a "standard value" method.[9] Standard value can be calculated in one of two ways, depending on whether the property is agricultural or forest as opposed to residential or historic. Residential and historic land is to be valued in much the same way as set forth in Act 135.[10] Conversely, Act 82–302 directs that the standard value of agricultural and forest land be computed applying a capitalized net income approach.[11]

The appellants urge that the net income method is arbitrary in that it fails to take into account any variable except the soil group of farmland or the productivity rating of timber property. It ignores such value-affecting factors as proximity to transportation facilities and the product actually grown.[12] Hence, the appellants argue that the use of two different methods for computation of the four types of Class III property violates the equal protection clause of the fourteenth amendment.

The law is well-settled that "[t]he States have a very wide discretion in the laying of their taxes." *Allied Stores v. Bowers*, 358 U.S. 522, 526, 79 S.Ct. 437, 440, 3 L.Ed.2d 480, 484 (1959). They may "classify property for taxation; may set up different modes of assessment, valuation and collection; [and] may tax some lands or property at higher rates than others," all without offense to the Constitution. *Nashville, Chattanooga & St. Louis Ry. v. Browning*, 310 U.S. 362, 368, 60 S.Ct. 968, 972, 84 L.Ed. 1254, 1257 (1940). *See also Lehnhausen v. Lake Shore Auto Parts*

6. Act 135 is codified at ALA.CODE § 40–7–25.1 (Supp.1983).

7. Specifically, Act 135 defines current use as: [T]he value of eligible taxable property based on the use being made of that property on October 1 of any taxable year; provided, that no consideration shall be taken of the prospective value such property might have if it were put to some other possible use. It is not the intent of the legislature to establish in this section any presumption as to the fair and reasonable market value of, any property, or any minimum such value.

8. Act 82–302 is codified at ALA.CODE § 40–7–25.1 (Supp.1983).

9. Act 82–302 was preceded by Act 79–163, a resolution that suggested guidelines to be followed in determining current use value. Act 79–163 was the first legislation to suggest valuation of current use under a "net income approach" similar to that ultimately implemented in Act 82–302.

10. Pursuant to Act 82–302, residential and historic property valuation: shall be determined by each county tax assessor annually utilizing comparative fair and reasonable market values of comparable residential or historic building and site property located in the county, which property cannot ordinarily be used other than as residential property or as an historic building or site, the tax assessor to presume that there is no possi-

bility of the property being used for any other purpose than as residential property or an historic building and site, as if there were a legal prohibition against its use for any other purpose.

11. The valuation estimation for farm and timberland is unusually long and complex. For example, the farmland computation may be synthesized into the following steps:
    1. Determine the state's top three crops for the current year.
    2. Determine the average *net* income (gross income less production costs) of each crop per acre.
    3. Compute a weighted average net income per acre figure based on the respective proportions of land that were planted in each of the three crops over the last 10 years.
    4. Take this final net income per acre figure and capitalize it using a specified interest rate.
    5. Finally, take the capitalized figure and increase or decrease it by a specified percentage depending on soil productivity.
    Timberland valuation is based on a similar, low-variable formula.

12. The net income capitalization method does make an adjustment, however, for soil productivity in the farmland computation. The net figure is increased by 20%, or decreased by 30% or 75%, depending on whether the soil is Good, Poor or Non-Productive, respectively. *See supra* note 11, step 5. The appellants claim that this adjustment is arbitrary as well.

*Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351, 354–55 (1973) ("[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.") To protect the states' fundamental taxing authority, federal equal protection challenges to state tax laws are reviewed with a minimal level of scrutiny. A statutory classification will withstand an equal protection challenge as long as it "rest[s] upon some ground of difference having a fair and substantial relation to the object of the legislation." *Allied Stores v. Bowers,* 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480, 485 (quoting *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989, 990 (1920)).

■ The "fair and substantial relation" standard generally has been applied liberally to invalidate state taxing classifications only when they are "palpably arbitrary." *Randolph v. Simpson,* 410 F.2d 1067, 1069 (5th Cir.1969). Even an intentionally discriminatory classification will pass muster if it "is founded upon a reasonable distinction, or difference in state policy," *Allied Stores v. Bowers,* 358 U.S. at 528, 79 S.Ct. at 441, 3 L.Ed.2d at 485, or "any state of facts reasonably can be conceived that would sustain it." *Id.,* 79 S.Ct. at 441, 3 L.Ed.2d at 486. *See also State Board of Tax Commissioners v. Jackson,* 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248 (1931).

■ The foregoing authority clearly expresses the historical policy of federal deference to state taxing power. In view of the wide latitude accorded the states in matters of taxation, classification schemes creating disparate tax treatment which are justified by a legitimate state purpose and are rationally related to effectuating that valid purpose will withstand federal constitutional attack.

Alabama justifies its disparate tax treatment of half of the four types of Class III property in two ways. First, it claims that individualized assessment of income-producing property is not administratively feasible because compilation of the necessarily detailed evaluations required would be an unduly tedious and time-consuming burden. Second, it asserts a special interest in preserving farm and timberland. Because the state's desire to maintain property for these two pursuits warrants a different approach to taxation, we need not reach the question of whether administrative convenience alone would constitute a sufficient excuse. *See, e.g., Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (administrative convenience alone will not justify disparate treatment based on sex).

■ The district court recognized that "Alabama is particularly concerned about the preservation of its agricultural and forest property and seeks through its property tax structure to preserve such property by providing additional preferential tax treatment for such property." *Weissinger v. White,* No. 2877–N, mem. op. at 10 (M.D. Ala. Oct. 5, 1983). Record at 52. The state is free to enact measures that attempt to perpetuate certain desirable uses of its land in the face of economic pressures to convert the property to other more lucrative pursuits. Institution of a favorable tax system is one rationally related means by which to effect that end. A formula for the evaluation of farm and timber property that routinely holds assessment values below the normal selling price will certainly encourage the continued use of land for its present purpose.[13] Therefore, in view of

---

**13.** The appellants also contend that application of the standard value method causes a small percentage of the properties to be valued in excess of fair market value. Even aside from the fact that standard valuation would work no actual hardship on property owners since use of that method is elective, an incidental hardship will not suffice to invalidate an otherwise constitutional statute. The Supreme Court has held that "the legislature is not required to make meticulous adjustments in an effort to avoid incidental hardships." *Great Atlantic & Pacific Tea Co. v. Grosjean,* 301 U.S. 412, 424, 57 S.Ct. 772, 776, 81 L.Ed. 1193, 1200 (1937) (footnote omitted).

Alabama's legitimate goal to preserve land for agriculture and forestry, we conclude that any disparity in the valuation of two of the types of Class III property is rationally related to the achievement of a permissible state purpose.

In the district court, the appellants also asserted that the tax statute violated the Alabama constitution. The district court declined to exercise pendent jurisdiction over this issue because it concerned a question of pure state law. The appellants now assign error to the court's refusal to entertain this ground for relief.

If both the state and federal claims derive from "a common nucleus of operative fact" and are of such a nature that they ordinarily would be tried in one judicial proceeding, then "assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228 (1966) (emphasis original) (footnote omitted). Merely because the federal district court has the authority to decide a state law question, does not mean that it is obligated to undertake that task. Various courts have recognized uniformly "that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228 (footnote omitted). *See also Williams v. Bennett*, 689 F.2d 1370, 1379–80 (11th Cir. 1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir.1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983).

Resolution of the appellants' second cause of action would have required the district court to construe Alabama law. While clothed with this license, the district court in this case determined that the validity of a taxing statute under the Alabama Constitution is a matter best left to that state's own courts. This exercise of jurisdictional discretion by the district court was entirely proper and did not constitute an abuse of that discretion. *See Williams v. Bennett*, 689 F.2d at 1379–80.

The judgment of the district court is AFFIRMED.