## Commonwealth v. The L. D. Caulk Co.

*Ralph S. Snyder*, for Commonwealth.
*M. Clyde Sheaffer*, for appellant.

NEELY, J., September 24, 1956.—This matter is here on appeal from the action of the board of finance and revenue in refusing to review defendant's tax settlement of its 1948 franchise tax imposed under the Act of May 16, 1935, P. L. 184, as amended, 72 PS §1871, et seq.[1] Defendant, a Delaware corporation, in its 1948 return computed its tax to be $2,306.54. The fiscal officers, however, recomputed the amount of the tax to be $3,373.97 and settled the tax accordingly. These officers refused defendant's request to make a resettlement, and, when the board of finance and revenue denied defendant's petition to review the settlement, this appeal was prosecuted.

It is defendant's contention that it was engaged in a multiform type of business activity in 1948 and that its tax was improperly settled on a unitary basis. Treating defendant's business as being unitary, the fiscal officers appraised defendant's capital stock at $3,500,000, to which they applied an allocating decimal

---

[1] The Act of 1935 amended the Act of June 1, 1889, P. L. 420. Section 21 is the imposition section in the Act of 1889. As amended in 1935, see 72 PS §1871(*b*).

of .192798, thus allocating to Pennsylvania the sum of $674,793 as the amount of the corporation's capital stock subject to the franchise tax. The tax was imposed at the rate of five mills, and the value thus allocated to Pennsylvania resulted in the tax as settled by the fiscal officers.

If defendant was engaged in a multiform type of business activity, the parties have agreed that the stock had an appraised value in Pennsylvania of $1,800,000, to which should be applied an allocating decimal of .288317, which would result in a taxable value of its capital stock employed in Pennsylvania of $518,970.00. And at the rate of five mills a tax of $2,594.85 would result. Defendant contends that only its retail business is done in Pennsylvania, and that the value of its property engaged in the manufacturing and wholesale business in the State of Delaware was not a proper element to be considered in determining the amount due the Commonwealth on defendant's 1948 franchise tax.

The parties have stipulated that this case shall be tried without a jury. By their stipulation they have also agreed upon the facts which they deem material. We do herein accept and adopt the facts as stipulated, and, on the basis of the whole record, make our own independent findings of fact which we deem particularly pertinent to the disposition of this case. Accordingly, therefore, we make the following

### Findings of Fact

1. Defendant is a Delaware corporation with its plant and offices located in Milford, Delaware, with the following rights, inter alia, to manufacture and sell at wholesale and retail dental and surgical supplies.

2. Defendant on March 1, 1936, acquired all of the assets and business of a certain corporation known as "L. D. Caulk Company Dental Depot, Incorporated",

organized under the laws of Pennsylvania, which was then engaged in the sale of over 5,000 items, and thereafter operated a retail division in Pennsylvania which sold not only many of the said 5,000 items but also sold 84 items manufactured from its plant in Delaware. The operation from its Delaware plant was maintained as a manufacturing and wholesale division.

3. The manufacturing and wholesale division also sold products that were bought from others for resale, and disposed of these products manufactured by others to the retail division.

4. In 1948 in the retail division there were 11 branches, three of which were located in Pennsylvania, eight being situated in other States. The business of the retail division was directed from defendant's offices situated in Philadelphia under the supervision of one of defendant's vice-presidents. There was another vice-president in charge of the manufacturing and wholesale division who operated from defendant's Delaware offices.

5. Separate accounting records were kept for each of these two divisions.

6. In 1948 the manufacturing and wholesale division made sales to 220 dealers throughout the country and also to governmental agencies, and in addition thereto disposed of its products to 11 branches of the retail division; in Pennsylvania there were eight of these dealers and three branches of the retail division.

7. In 1948 the 11 branches of the retail division acquired from the manufacturing and wholesale division for the purpose of sale at retail 16 percent of defendant's manufactured products and products bought from others for resale; such retail sales accounted for 11 percent of the gross sales made by the retail division.

8. The retail division, in addition to the items which

it received from the manufacturing and wholesale division, bought and sold at retail many items of dental supplies and related articles which were acquired from other business concerns.

9. Representatives of the manufacturing and wholesale division traveled in Pennsylvania and called upon the eight dealers and three branch offices of the retail division above mentioned for the purpose of demonstrating materials, training dealer salesmen and promoting defendant's business, all of which activity benefited defendant's enterprise and promoted its sales in this State.

10. The Department of Revenue and Auditor General treated defendant's business as being unitary and appraised defendant's capital stock at a value of $3,500,000, allocated to Pennsylvania the sum of $674,793 as the amount of the corporation's capital stock subject to the franchise tax and settled the tax in the amount of $3,373.97. The board of finance and revenue refused to review this settlement and the tax has been paid in full.

## Discussion

Defendant was incorporated in the State of Delaware, inter alia, for the general purpose of the manufacture and sale of dental supplies at wholesale and retail. Defendant contends that it was carrying on its manufacturing and wholesale business at Milford, Delaware, as a separate division and that its retail business was segregated therefrom in a retail division doing business in Pennsylvania, and that one of its vice-presidents from offices in Philadelphia directed the operation of 11 retail branches scattered throughout the country, three of which branches were located in Pennsylvania. Defendant contends that these two divisions were independent and disconnected activities. It is claimed that it was not proper as the measure of its franchise tax liability to include the value of all

defendant's capital stock in the amount of $3,500,000, since that figure was based upon the value of its property in both divisions. Defendant contends that only that portion of its capital concerned with the retail business transacted through its offices in Pennsylvania should be taken into account, and it is agreed, as hereinabove stated, that this portion amounts to $1,800,000. The essence of defendant's claim, then, is that as the measure of its tax liability, defendant's capital stock should be appraised at $1,800,000 and not at the figure adopted by the fiscal officers, namely, $3,500,000.

The fiscal officers considered that defendant's business was unitary. A corporation may be said to be carrying on a unitary enterprise where the component parts of its business are too connected and necessary to each other to justify separate consideration as independent units. Where a corporation is engaged in several projects which enable it to derive benefits from them that are not inherent in any of the projects when standing alone, the enterprise is unitary. See Kent-Coffey Mfg. Co. v. Maxwell, 204 N. C. 365, 168 S. E. 397, affirmed in 291 U. S. 642 (1934); Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U. S. 412, 425 (1937). Multiformity in business activity exists where two separate and segregated enterprises are not related to each other and are conducted as separate and independent units, and the corporation derives benefits from each independent unit that are not related to the operation of the other units.

In imposing a franchise tax where the business is unitary, a State may look beyond its borders to "get the true value of the things within it, when they are part of an organic system of wide extent": Wallace v. Hines, 253 U. S. 66, 69 (1920). See also Kansas City, Memphis & Birmingham Railroad Company v. Stiles, 242 U. S. 111 (1916).

The franchise tax of 1935 is a tax upon foreign corporations for the privilege of doing business in Pennsylvania. The value of their capital employed in doing business in Pennsylvania and allocated here is the measure by which the amount of the tax is determined through the use of allocating fractions as set forth in the taxing formula in the statute. The doctrine of multiformity in the application of this formula was recognized by our Supreme Court in Commonwealth v. Columbia Gas and Electric Corporation, 336 Pa. 209 (1939), in order to avoid an unconstitutional result in levying the franchise tax upon the taxpayer in that case. The corporation there was engaged in two distinct and independent business activities which were completely unrelated to each other and which, therefore, the Supreme Court considered to be multiform business activities. The corporation was engaged in a holding company business outside of Pennsylvania, and conducted an operating business within the State for the manufacture of gasoline and natural gas. The Supreme Court held that it would violate due process of law to levy a tax on the property used in the corporation's holding company business outside of the State which had no relation to its business within the State. It was held that because of these multiform activities, Pennsylvania could tax only that portion of the capital of the corporation used within this Commonwealth as an operating company. The court said, at page 222:

". . . the taxable value of the franchise must have some relation to the business done in the taxing state. . . . the property without the state may be taken into consideration only if it is an organic or functional part of that within the state."

And at page 224, the court commented:

"Appellee performs only a part of its functions within the state, and in connection therewith, employs

a part of its tangible and some intangible property. Under the principles relating to corporations engaging in multiform business and considering that only part of appellee's business is conducted in Pennsylvania, as far as the capital stock value is related to tangible and intangible property, only such tangibles and intangibles should be taken into account as are concerned with the functions exercised within the state. . . . Its power to act as a holding company is authorized under the laws of Delaware. It is obvious therefore that to include within the taxable measure all the property used in connection with this function would be to levy a franchise tax having no relation to the privilege granted by this State to appellee as an operating company or to any function actually performed herein."

Thus, in the Columbia Gas and Electric Corporation Case, to avoid applying the franchise tax in such a manner as to violate due process of law, the Supreme Court recognized that it was proper to consider the taxpayer's two separate and independent lines of activity as multiform business activities and tax only that portion of the capital engaged in the activity carried on within the Commonwealth.

In Commonwealth v. American Telephone and Telegraph Company, 382 Pa. 509 (1955), the Supreme Court affirmed this court, Richards, P. J., in refusing to apply the principle of multiformity to the corporate net income tax to the disadvantage and over the objection of the taxpayer. The court limited the application of the multiformity doctrine in the following language, at page 518:

". . . What the Columbia Gas and Electric Corporation case decided,—and all that it decided—was that if, *in a particular instance*, the application of the formula expressly specified . . . . worked an unconstitutional result by imposing upon the corporation

the taxation of values beyond the taxing power of the State, and if the corporation therefore objected to the tax, the Act must be so construed and applied as to avoid such a result by computing the tax on a multiform instead of a unitary basis." Cf. Commonwealth of Pennsylvania v. The Baker-Whiteley Coal Company, 60 Dauph. 434 (1950), Richards, P. J.

These cases indicate that for tax purposes the enterprise of a corporation may in appropriate circumstances be considered as a multiform business activity where it is essential to do so to avoid levying a tax beyond the taxing power of the State and therefore in violation of due process of law. This so-called doctrine of multiformity, however, is the exception and not the general rule, in determining the extent that the capital of a foreign corporation is to be used to measure corporate taxes in this State.

We think the true applicable rule is well stated in Wisconsin v. J. C. Penney Co., 311 U. S. 435, 444, 445 (1940), Mr. Justice Frankfurter, as follows:

". . . That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. The substantial privilege of carrying on business in Wisconsin, which has here been given, clearly supports the tax, and the state has not given the less merely because it has conditioned the demand of the exaction upon happenings outside its own borders. The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction." Other Federal decisions recognize this same principle: Ford Motor Co. v. Clark, 100 F. 2d 515, 517 (CCA Fifth

Circuit, 1938) ; Bass, Ratcliff & Gretton, Limited, v. State Tax Commission, 266 U. S. 271 (1924) ; Butler Brothers v. McColgan, 315 U. S. 501, 508 (1942).

In the light of the principles enunciated in these cases, let us briefly analyze defendant's activities. Defendant's certificate of authority in this State is "to manufacture and sell at wholesale and retail dental and surgical supplies." Defendant contends that there is much significance in the fact that through its retail division thousands of additional articles were sold that were not manufactured or wholesaled by defendant. Defendant advertised under its corporate name and sold these articles through its retail branches managed from its offices in Philadelphia. It could not be successfully denied that these extensive sales of dental supplies promoted the business potency of defendant's integrated enterprise. It promoted and benefited defendant's business as a whole, and the advertising by the retail division kept defendant's corporate name before the public. These retail sales, in our judgment, would have no tendency to derogate from any concept that defendant was engaged in a unitary business. In fact, such sales and the advertising in connection therewith tended to indicate the unitary structure of this enterprise.

The record shows that 16 percent of defendant's manufactured products and products bought from others for resale in 1948 were sold through its 11 retail branches, three of which were located in Pennsylvania, eight being situated in other States, and all of which retail branches were managed from defendant's Philadelphia offices. The stipulation refers to this percentage, 16 percent, of defendant's products as having been sold from the wholesale to the retail division, leaving the implication that these sales were made out of Delaware by the wholesale division, and that such division had no further connection therewith.

The parties stipulated that these transactions were sales. Nothwithstanding this stipulation, however, to refer to these transactions as sales is a misnomer. They were not sales within the definition of the term "sale" as used in any legal sense. They were inter-division accounts. The term "sale" historically, and by any definition, refers to some contract by which property is transferred from the seller to the buyer for a fixed price. These were bookkeeping transactions. The company had merely transferred these items to its retail outlets for sale. Their manufacture was but the preliminary step in the process of the marketability of these products. The marketing of these products was being supervised, managed and accounted for through the retail division in Pennsylvania.

Defendant from its offices in Milford, Delaware, sent its representatives into Pennsylvania to demonstrate its materials and train dealers and salesmen, there being 11 sales outlets in Pennsylvania where these demonstrations were made. These activities by its representatives were intended to be a benefit both to defendant's wholesale and retail business. The important point is that all of defendant's various activities carried on in Pennsylvania tended to increase and promote the entire business enterprise of defendant.

Defendant was not engaged in a retail business in Pennsylvania that was independent of and disconnected with its wholesale and manufacturing business. On the contrary, we think that the business of the manufacturing and wholesale division and that of the retail division complemented each other and were definitely connected; they together promoted and benefited the integrated operations of this company.

We consider defendant's business activity to have been unitary in 1948, and therefore the computations applicable to the settlement of taxes of a corporation engaged in a multiform business activity are not avail-

able to defendant to determine the amount of its 1948 franchise tax. Our conclusion on this point is borne out by a number of decisions by our own Supreme Court. In Commonwealth v. Ford Motor Company, 350 Pa. 236 (1944), the corporation claimed four distinct lines of corporate activity, (1) the purchase and production of raw materials, (2) the manufacture of steel, paint, glass, etc., (3) assembly of automobile parts into automobiles and (4) sales and servicing of cars. This case, of course, involved the vast Ford industrial empire. In a number of aspects that case has pertinence here, and particularly with respect to the sale in Pennsylvania by the retail division of 16 percent of defendant's manufactured products. We quote in brief from the Supreme Court's decision in the Ford case, at pages 244-245:

"The tremendous advantage which has accrued to appellant by this integration of activities is manifest. The cost of the products in Pennsylvania has been affected by the economies possible in such a *unitary* structure. The demand for them has been affected by the goodwill of the large single enterprise, its centralized advertising possibilities, and its financial stability. Each one of the diversified activities of the corporation, representing together the full play of its enormous capitalization, bears directly or indirectly, and materially, upon the value of the Pennsylvania franchise. Obviously, the company cannot enjoy all of the practical advantages of an industrial unit, and, at the same time, attempt to deny for tax purposes the integration of the enterprise and the effect of that integration on its business activities in this State."

In Commonwealth v. Quaker Oats Company, 350 Pa. 253 (1944), the corporation divided its activities into three divisions, (1) the purchase and storage of grains, (2) the manufacture of cereals and cereal products and (3) selling and dealing in cereal products.

The taxpayer contended that the business was multiform and that the first two operations were conducted exclusively outside of Pennsylvania. Our Supreme Court in disposing of this contention, at page 257, said:

". . . the purchasing, storing and manufacturing processes of appellant were not complete and distinct corporate activities, or businesses. They were not self-sustaining or an end in themselves. They were conducted in aid of the selling activities, with which they are interlocked and integrated." See also Commonwealth v. Eaglis Corporation, 354 Pa. 493 (1946), and compare with Commonwealth v. The Mundy Corporation, 346 Pa. 482 (1943).

It is our conclusion, on the basis of the authorities hereinabove cited, that the amount of $3,500,000 was the value of defendant's capital stock in 1948 and the fiscal officers correctly used this amount to measure defendant's franchise tax for the year 1948. Defendant has filed with us requests for findings of fact and conclusions of law which are herewith refused.[2] In view of the foregoing, we make the following

### Conclusions of Law

1. The L. D. Caulk Company, defendant herein, in 1948 was engaged in a business enterprise that was unitary in its structure.

---

[2] Defendant's requests for findings of fact read as follows:

"The L. D. Caulk Company was engaged in 1948 in two distinct lines of business:

"(1) A 'Manufacturing and Wholesale Division.'

"(2) A 'Retail Division'."

Defendant's requests for conclusions of law read as follows:

"(1) The operations of The L. D. Caulk Company for the year 1948 shall be classified as 'multiform'.

"(2) The L. D. Caulk Company is subject to Franchise Tax for the year 1948 by applying an allocating decimal of .288317 to the sum of $1,800,000.00 or on $518,970. at the rate of five mills or $2,594.85 Franchise Tax."

2. For the purpose of determining defendant's franchise tax for 1948 under the Act of May 16, 1935, P. L. 184, as amended, defendant's business enterprise must be considered on a unitary basis.

3. As the measure of its franchise tax for the year 1948, defendant's capital stock had an appraised value of $3,500,000.

4. The Department of Revenue and the Auditor General properly appraised defendant's capital stock at the value of $3,500,000.

5. The action of the Department of Revenue and the Auditor General in settling the tax against defendant for the year 1948 in the amount of $3,373.97 was correct, and the board of finance and revenue was likewise correct in refusing defendant's petition to review that settlement.

6. The entire amount of tax due the Commonwealth having been paid, judgment must be entered in favor of the Commonwealth and against defendant in accordance with the following schedule:

Amount of tax claimed by the Commonwealth (paid in full) ................... $3,373.97

Amount of tax claimed to be due by defendant ............................... $2,594.85

Amount of tax in dispute (paid in full) $ 779.12

### Order

And now, September 24, 1956, the appeal is dismissed; it is hereby directed that judgment be entered in favor of the Commonwealth and against defendant for the tax of $779.12 unless exceptions be filed to this order within 30 days hereof, and it is further ordered that judgment shall be marked satisfied of record upon payment of costs by defendant. The prothonotary shall notify the parties hereto or their counsel of this order forthwith.